Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

BURLEY E. HISE AND
DARLENE S. HISE
                                              OPINION BY
V. Record No. 961577          SENIOR JUSTICE HENRY H. WHITING
                                          September 12, 1997
BARC ELECTRIC COOPERATIVE, ET AL.

                FROM THE CIRCUIT COURT OF BATH COUNTY
                       Duncan M. Byrd, Jr., Judge


     In this appeal, we consider the scope of an electric power

company's rights in an easement in gross for the construction and

operation of its electric power line acquired (1) by prescription

and (2) by eminent domain. Specifically, we decide whether the

power company can permit a telephone company and a cable

television company to attach their lines to the power company's

poles without the consent of the owners of the servient estate.

     For a number of years, BARC Electric Cooperative (the power

company) operated a 7,000 volt electric power line pursuant to an

alleged 30-foot prescriptive right of way across the property of

Burley E. Hise and Darlene S. Hise in Bath County. In an eminent

domain proceeding, the power company acquired the rights (1) to

"relocate" its pole line by erecting single pole structures at a

height not to exceed 60 feet at locations shown on a plat

attached to its "petition for condemnation" and (2) to widen its

prescriptive right of way by 50 feet in order to construct and

operate a new 46,000 volt electric power line over the Hise

property. Following that proceeding, the power company installed

new poles and lines within the original 30-foot easement and

transferred its original lines to the new poles.

Since the power company had permitted Virginia Telephone Company and Bath Cable TV, Inc., to attach their respective lines to the original poles, and the three companies planned to move those lines to the power company's new poles, the power company did not comply with the Hise request to remove the original poles and the telephone and cable lines attached thereto. Whereupon, the Hises brought this action against all three companies to compel the removal of the original poles and to enjoin the telephone and cable companies from transferring their lines to the new poles.

After hearing evidence on the issue of the width of the prescriptive easement, the court found it to be 30 feet wide. Thereafter, in sustaining motions for summary judgment filed by the telephone and cable companies, the court held that they could transfer their lines to the power company's new poles pursuant to their agreements with the power company. The court also ordered the power company to remove the old poles after such transfer. The Hises appeal the first two rulings.

While conceding that the power company had established its prescriptive easement over their property, the Hises contend that the power company failed to carry its burden of establishing the width of its prescriptive easement by clear and convincing evidence as required in Pettus v. Keeling, 232 Va. 483, 486, 352 S.E.2d 321, 324 (1987). The power company contends that it has carried that burden.

In accordance with well-settled appellate principles, we view the evidence in the light most favorable to the power company, the prevailing party on this issue of fact. Such evidence indicates that for a period of more than 20 years prior to the filing of this suit, the power company periodically sprayed and cleared the foliage and undergrowth along its pole line, including the Hise property, for a width of at least 30 feet. The evidence also discloses that during this period it was the usual and customary practice of all power companies, including this one, to "make all rural lines thirty feet [wide]."

In our opinion, this evidence sufficiently supports the court's finding that the prescriptive right of way was 30 feet wide. Accordingly, we reject this contention of the Hises.

Next, the Hises claim that neither the prescriptive rights nor the rights taken in the eminent domain proceeding are exclusive or apportionable and therefore the power company had no right to authorize the attachment of the telephone and cable lines to its new pole lines. The utility companies disagree.

All parties describe these easements as easements in gross, which are "easement[s] with a servient estate but no dominant estate." Corbett v. Ruben, 223 Va. 468, 472, 290 S.E.2d 847, 849 (1982). Although personal to the grantee, the easement is transferable by the grantee. Code § 55-6; Corbett, 223 Va. at 472 n.2, 290 S.E.2d at 849 n.2.

Exclusivity

-3-

"An exclusive easement in gross is one which gives the owner the sole privilege of making the uses authorized by it."  5 Restatement of Property § 493 cmt. c (1944).  If the easement in gross is exclusive, the owner of the easement may have the right of apportionment which is described as one of "so dividing [an easement in gross] as to produce independent uses or operations."  Id. at § 493 cmt. a.

In our opinion, the power company's prescriptive right was an exclusive right.  The evidence indicates that no use was made of the easement by any person or entity other than the power company and its permittees, the telephone and cable companies.

We determine the exclusivity of the power company's later easement by a consideration of the following pertinent descriptions of the rights acquired in the eminent domain proceeding:

> "(3) The public uses for which the perpetual rights, privileges and easement of right of way described in this Petition are to be acquired are the construction, operation, maintenance and relocation of the Company's transmission and distribution line . . . ."
>
> * * * *
>
> "(6) The estate, interest or rights sought to be acquired are the perpetual right, privilege and easement of right of way . . . over, under, upon and across lands described herein . . . .
>
> The facilities installed on the easement of right of way shall remain the property of the Company.  The Company shall have the right to inspect, rebuild, remove, repair, improve, relocate such facilities on such right of way, and make such changes, alterations, substitutions, additions to or extensions of its facilities as the Company may from time to time deem advisable."

-4-

* * * *

> "The owners, their successors and assigns, may use the right of way for any purpose not inconsistent with the rights herein sought to be condemned including, but not limited to, the right to construct, operate and maintain . . . telephone, electric or other utility lines across the right of way, in such manner that the angle between the center line thereof and the center line of the right of way shall not be less than forty-five degrees, provided that such use does not interfere with or endanger the construction, operation or maintenance of the Company's facilities . . . . The Company shall at all times have the paramount right to cross or cut through such . . . telephone, electric or other utility lines and to interrupt the use thereof, for the purpose of constructing, maintaining, operating, repairing, altering or replacing its facilities . . . "

The Hises claim that their right to "use the right of way for any purpose not inconsistent with the rights sought to be condemned," creates a nonexclusive easement in gross. We disagree.

Nothing in the description of the Hises' rights permits them to share the electric company's poles or lines. Further, any utility lines constructed by the Hises or their grantees that cross the power company's easement (1) must be at angles of not less than 45 degrees with the power company's easement, (2) cannot interfere with or endanger the power company's use of the easement, and (3) are subject to the power company's paramount rights. In our opinion, none of the Hises' retained rights deprived the power company of its "sole privilege of making the uses authorized by [the eminent domain proceeding]." Restatement of Property § 493 cmt. c. Accordingly, we conclude that the

power company acquired an exclusive easement in gross in the eminent domain proceeding.

## Apportionability

"When an easement in gross is created by prescription, the question of its apportionability is decided in the light of the reasonable expectation of the parties concerned in its creation as inferred from the nature of the use by which it was created." Id. at § 493 cmt. b. During the prescriptive period in which the power company maintained its pole line across the Hise property, it permitted the telephone and cable companies to attach their lines to its poles. Such attachments had been made without objection from the Hises for more than 16 years before this controversy arose and the Hises have used the cable line for television reception to their property since 1979.

We think the attachment of the telephone and cable lines demonstrates that the power company construed its prescriptive easement as an exclusive one with a right of apportionment. Moreover, the Hises apparently acquiesced in that construction both by failing to object to the additional lines and by making use of one of those lines. Accordingly, the evidence supports a conclusion that the 30-foot prescriptive easement was apportionable, thereby giving the power company the right to permit the attachment of the telephone and cable lines to its poles within that area.

In determining the apportionability of the easement acquired

in the eminent domain proceeding, we note that "the fact that
[the servient tenant] is excluded from making the use authorized
by the easement, plus the fact that apportionability increases
the value of the easement to its owner, tends to the inference in
the usual case that the easement was intended in its creation to
be apportionable." Restatement of Property § 493 cmt. c.

The Hises observe that the instrument describing the rights
acquired in the eminent domain proceeding does not contain the
broad language contained in the cases relied upon by the utility
companies in which power company easements in gross were held to
be apportionable. However, as pointed out by the utility
companies, the power company's express power to "improve" and to
make "additions to or extensions of its facilities" as acquired
in the eminent domain proceedings sufficiently supports the trial
court's inference of apportionability in this case. Accordingly,
we hold that the power company could permit the television and
cable companies to attach their lines to the new poles.

For all these reasons, we will affirm the judgment of the
trial court.

<u>Affirmed</u>.