Present:  Lacy, Keenan, Koontz, Kinser, Lemons, and Agee, JJ.,
and Stephenson, S.J.

VIRGINIA ELECTRIC AND POWER
COMPANY, d/b/a DOMINION
VIRGINIA POWER

v.  Record No. 042426    OPINION BY JUSTICE DONALD W. LEMONS
                                 September 16, 2005

NORTHERN VIRGINIA
REGIONAL PARK AUTHORITY

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       Jonathan C. Thacher, Judge

     This case involves a strip of land generally 100 feet
wide and 45 miles long known as the "W&OD Trail" ("the Trail")
that is one of the most popular bike trails in America and is
host to approximately three million visitors annually.
Located in northern Virginia and stretching from Arlington
County to Purcellville, Virginia, the Trail is also an
extraordinarily valuable property impressed with numerous
easements for utility purposes.  This dispute centers upon
whether Virginia Electric and Power Company, doing business as
Dominion Virginia Power ("Virginia Power"), has an exclusive
easement in gross upon the Trail for communication purposes
such that it has the right to apportion its easement and
license telecommunication rights to others.

                I.  Facts and Proceedings Below

     The Northern Virginia Regional Park Authority ("Park
Authority"), was formed in 1959 by the counties of Fairfax,

1

Loudoun, and Arlington, and the cities of Fairfax, Falls Church, and Alexandria pursuant to former Code § 15-714.3 (1956), the predecessor of current Code § 15.2-5702.  At that time, the Washington and Old Dominion Railroad ("W&OD Railroad") operated in part on the parcel of land involved in the controversy currently before the Court.  In 1968, Virginia Power purchased this parcel of land from the W&OD Railroad. In 1976, the Park Authority sought to purchase the parcel in order to create a recreational trail and entered into discussions with Virginia Power to effect this purchase.  Both the Park Authority and Virginia Power were sophisticated parties and well represented to ensure that their respective interests were protected.  The parties entered into an Option Agreement on December 19, 1977.

Subsequent to the Option Agreement, the Park Authority purchased the parcel from Virginia Power in a series of successive transactions and deeds, and created what is now known as the W&OD Trail.  These deeds each contain the same operative language found in Paragraphs 11 and 18 of the Option Agreement.  It is this language contained in the Option Agreement and the deeds that is the focus of the dispute now before the Court.  The parties agreed in Paragraph 11 of the Option Agreement that:

[Virginia Power] will reserve unto itself
all its electric facilities now located on said
lands.  [Virginia Power] will further reserve
unto itself and its successors the following:

The perpetual right, privilege and
easement of right of way to lay, construct,
operate and maintain one or more lines of
poles, towers, structures, cables, conduits,
pipes and mains, together with all wires,
manholes, handholes, valves, regulators,
meters, attachments, equipment, accessories and
appurtenances desirable in connection therewith
(hereinafter referred to as "facilities"), for
the purpose of transmitting or distributing
electric power, for the purpose of transporting
natural gas, oil, petroleum pro[du]cts or any
other liquids, gases or substances which can be
transported through a pipe line, and for
communication purposes, over, under, upon and
across the lands hereby conveyed.

Paragraph 18 stated:  "The Authority will not permit,

assign or grant any other party easements, rights, privileges

or encroachments of any nature on the land hereby conveyed,

without the written approval of the Company, provided such

approval shall not be withheld unreasonably."  This language

was incorporated into each of the deeds that ultimately

conveyed fee simple ownership of what is now the W&OD Trail to

the Park Authority.  Each deed also contained a concluding

paragraph that stated:

It is agreed between the parties hereto
that all references to [Virginia Power] and the
[Park] Authority shall include their respective
successors, and that all obligations hereunder
shall also bind any assignees of the [Park]
Authority.  All restrictions, rights,
agreements, covenants and warranties herein are

3

>   appurtenant to the property hereby conveyed and
>   shall run with the land.

After the Option Agreement was finalized in 1977, and following the initial transfer of the parcel to the Park Authority in 1978, Virginia Power advised all tenants of the transfer of ownership and provided the Park Authority with a list of all tenants and their respective rents.

The present dispute has its origins in the growth of the telecommunications industry that occurred in the 1980s and 1990s. Dating back to the ownership of the parcel by the W&OD Railroad, numerous servitudes existed upon the parcel. Many of these continued into the ownership of the parcel by both Virginia Power and the Park Authority. The Option Agreement and deeds specifically stated that the Park Authority "will permit the present Lessees of [Virginia Power], to continue to occupy such portions [of the parcel] as are presently under lease, for at least five years from the date of the conveyance, provided such occupancy does not unreasonably interfere with the establishment" of the W&OD Trail.

In 1986, AT&T approached the Park Authority seeking to install fiber optic cables along the W&OD Trail. During negotiations with AT&T, a dispute arose between the Park Authority and Virginia Power as to the scope of Virginia Power's "approval" rights. In 2000, following several years

4

of work on its existing transmission lines to equip them with fiber optic lines, Virginia Power decided that it could and would negotiate directly with telecommunication customers regarding licensing of its lines without including the Park Authority in the process.

The Park Authority initiated this present action when it filed a "Motion for Declaratory Judgment and Other Relief" asking the Circuit Court of Fairfax County "to clarify that in addition to Virginia Power having no right to assign, and no exclusive rights, it has no right of apportionment" with respect to the granting of telecommunication access to third parties, without a license granted by the Park Authority. Virginia Power filed an answer and a cross-bill seeking declaratory judgment in its favor. Both the Park Authority and Virginia Power asserted in the trial court that the deeds were unambiguous.

After hearing evidence ore tenus, the trial court held "that the deeds are unambiguous and clearly demonstrate the parties' intention to enter into a non-exclusive easement in gross. Therefore, Virginia Power does not have the power to apportion it's [sic] easement to third parties for telecommunication purposes." Virginia Power filed a "Renewed Motion to Strike," which was denied, and the trial court entered its final decree declaring that the parties entered

5

into a "non-exclusive easement in gross with no right of apportionment," that the Park Authority "has the right to make further conveyances to third parties for telecommunications and other purposes, subject to [Virginia Power's] approval, which shall not be withheld unreasonably," and that Virginia Power's "purported transfer to its sister company Dominion Telecom, Inc. of any right to install or use telecommunications lines on the W&OD Trail exceeded [Virginia Power's] rights under its easement."

We awarded Virginia Power this appeal and agreed to hear four assignments of error: (1) the trial court erred in determining that the easement is non-exclusive; (2) the trial court erred in determining that the easement is not apportionable; (3) the trial court erred "in considering extrinsic evidence in construing unambiguous language of the deeds creating the easement;" and (4) the trial court was clearly erroneous in finding that Virginia Power's "legal position concerning the proper construction of its easement was of recent origin." We also agreed to hear the Park Authority's assignment of cross-error that the trial court reached the correct result, but nonetheless erred in failing to consider the Option Agreement and the transfer letters Virginia Power sent after execution of the first deed.

## II. Analysis

6

## A. Standard of Review

Whether a writing is ambiguous is a question of law, not of fact. Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003); Pyramid Dev., L.L.C. v. D&J Assocs., 262 Va. 750, 754, 553 S.E.2d 725, 727 (2001). "Accordingly, on appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself." Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (citing Wilson v. Holyfield, 227 Va. 184, 187–88, 313 S.E.2d 396, 398 (1984)). As such, we review the judgment of the trial court de novo. In conducting our review, we are mindful that "the function of the court is to construe the contract made by the parties, not to make a contract for them." Doswell L.P. v. VEPCO, 251 Va. 215, 222, 468 S.E.2d 84, 88 (1996) (citing Wilson, 227 Va. at 187, 313 S.E.2d at 398).

" '[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties.' " Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) (quoting Globe Company v. Bank

7

of Boston, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)).
" 'When the language of a deed is 'clear, unambiguous, and
explicit,' a court interpreting it 'should look no further
than the four corners of the instrument under review.' "
Utsch, 266 Va. at 129, 581 S.E.2d at 509 (quoting Langman v.
Alumni Assoc. of Univ. of Va., 247 Va. 491, 498-99, 442 S.E.2d
669, 674 (1994)).  "The pole star for the construction of a
contract is the intention of the contracting parties as
expressed by them in the words they have used . . . . It is
the court's duty to declare what the instrument itself says it
says."  Ames v. American Nat. Bank, 163 Va. 1, 38, 176 S.E.
204, 216 (1934).  "Where language is unambiguous, it is
inappropriate to resort to extrinsic evidence; an unambiguous
document should be given its plain meaning."  Great Falls
Hardware Co. of Reston v. South Lakes Village Center Assocs.,
L.P., 238 Va. 123, 125, 380 S.E.2d 642, 643 (1989).

"Thus, if the intent of the parties can be determined
from the language they employ in their contract, parol
evidence respecting their intent is inadmissible."  Golding v.
Floyd, 261 Va. 190, 192-93, 539 S.E.2d 735, 737 (2001) (citing
Amos v. Coffey, 228 Va. 88, 91-92, 320 S.E.2d 335, 337
(1984)).  "[I]n controversies between two parties to a
contract, parol evidence of prior or contemporaneous oral
negotiations or stipulations is inadmissible to vary,

8

contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." Godwin v. Kerns, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941).

### B. Exclusivity and Apportionability

Both parties to this controversy agree that the easement in question is an easement in gross. An easement in gross is an "easement with a servient estate but no dominant estate." Corbett v. Ruben, 223 Va. 468, 472, 290 S.E.2d 847, 849 (1982). Although personal to the grantee, an easement in gross is transferable by the grantee. Code § 55-6; United States v. Blackman, 270 Va. 68, 78, 613 S.E.2d 442, 446-47 (2005); Hise v. BARC Elec. Coop., 254 Va. 341, 344, 492 S.E.2d 154, 157 (1997); Corbett, 223 Va. at 472 n.2, 290 S.E.2d at 849 n.2.

This controversy is over whether Virginia Power's easement is exclusive or non-exclusive. "An exclusive easement in gross is one which gives the owner the sole privilege of making the uses authorized by it." 5 Restatement (First) of Property § 493 cmt. c (1944). If the easement in gross is exclusive, the owner of the easement may have the right of apportionment, which is described as one of "so dividing [an easement in gross] as to produce independent uses or operations." Hise, 254 Va. at 344-45, 492 S.E.2d at 157

9

(citing 5 Restatement (First) of Property § 493 cmt. a. (1944)). On the other hand, a non-exclusive easement in gross

> is one which does not give, as against the owner of the servient tenement and others who may be privileged under him, the sole privilege of making the use authorized by the easement. . . . Because of this, the apportionability of the easement will not be assumed in the absence of a clear indication to the contrary in the manner or terms of its creation.

5 Restatement (First) of Property § 493 cmt. d. (1944).

First, we must address Virginia Power's assertions that the trial court erred "in considering extrinsic evidence in construing unambiguous language of the deeds creating the easement" and in finding that Virginia Power's "legal position concerning the proper construction of its easement was of recent origin." While the trial court's letter opinion, incorporated into its final order, does make reference to these matters, the trial court's holding is abundantly clear: "This Court holds that the deeds are unambiguous and clearly demonstrate the parties' intention to enter into a non-exclusive easement in gross." Virginia Power's assignments of error regarding the trial court's reference to extrinsic evidence and late arrival at its current position in this litigation are without merit.

Virginia Power asserts that the trial court erred in its holding that the easement in gross is non-exclusive and is

10

therefore not apportionable.  Virginia Power argues that the trial court's judgment is contrary to our decision in Hise. We disagree.  The principles articulated in Hise are applicable to this controversy; however, the cases are factually distinguishable.

In Hise, we considered the exclusivity of an easement in gross obtained both by eminent domain and prescription. There, a power company had operated a 7,000 volt power line over the landowner's property based upon rights obtained by prescription.  The power company acquired additional rights by eminent domain and sought to erect new poles and transfer lines.  The power company had permitted telephone and cable television companies to attach their lines to its poles.  Upon the widening of the prescriptive easement, the landowners objected and raised the issue of exclusivity and apportionment of the easement.  254 Va. at 343-44, 492 S.E.2d at 156-57.  In holding that the easement in gross was an exclusive right, we examined the description of rights acquired in the eminent domain proceeding as well as the evidence of prescriptive use.

We held that the power company's prescriptive rights were exclusive because the evidence proved that "no use was made of the easement by any person or entity other than the power company and its permittees, the telephone and cable companies."  Id. at 345, 492 S.E.2d at 157.  After the

11

condemnation proceeding expanded the easement of the power company, the Hises maintained that the right "to use the right of way for any purpose not inconsistent with the rights sought to be condemned," which they retained in the condemnation proceeding, rendered the power company's easement non-exclusive. Id. at 346, 492 S.E.2d at 158. Upon careful consideration of the language used, we disagreed:

> Nothing in the description of the Hises' rights permits them to share the electric company's poles or lines. Further, any utility lines constructed by the Hises or their grantees that cross the power company's easement (1) must be at angles of not less than 45 degrees with the power company's easement, (2) cannot interfere with or endanger the power company's use of the easement, and (3) are subject to the power company's paramount rights. In our opinion, none of the Hises' retained rights deprived the power company of its "sole privilege of making the uses authorized by [the eminent domain proceeding]." Restatement of Property § 493 cmt. c. Accordingly, we conclude that the power company acquired an exclusive easement in gross in the eminent domain proceeding.

Id.

Just as we examined the particular language used in the eminent domain proceeding in Hise, we must examine the language used in the deeds in this case and the circumstances of the parties at that time. As we have stated:

> The facts and circumstances surrounding the parties when they made the contract, and the purposes for which it was made, may be taken into consideration as an aid to the

12

> interpretation of the words used, but not to
> put a construction on the words the parties
> have used which they do not properly bear.

Seaboard Air Line R.R. Co. v. Richmond-Petersburg Turnpike Auth., 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961); see also Flippo v. CSC Assocs. III, L.L.C., 262 Va. 48, 64, 547 S.E.2d 216, 226 (2001).

When the Trail was owned by the W&OD Railroad, it was used for telecommunications purposes by third parties. C&P Telephone had an agreement to use the property for its wires and structures since at least 1959. AT&T was granted licenses by the railroad to install telecommunications lines in 1965 and 1966. In 1962, Virginia Power acquired an easement to use the property for power lines.

When Virginia Power purchased the fee interest in the property from the railroad, the conveyance was made "subject to all existing recorded covenants, restrictions, easements, leases, permits, licenses and existing physical encroachments or any possible rights of third parties." At the time of the conveyance, there were numerous above-ground telephone lines on the property. Virginia Power obtained its fee interest encumbered by this existing utility usage by third parties. During the 10 years that Virginia Power owned the fee interest, it granted additional communications licenses and easements to third parties.

13

When Virginia Power sold its fee interest to the Park Authority in 1978, the various deeds were made "subject to all existing covenants, restrictions, easements, leases, permits and licenses which affect the property . . . ." Additionally, Virginia Power retained a utility easement in its deed to the Park Authority. Virginia Power conveyed a large number of pre-existing licenses and leases to the Park Authority as a part of the transaction. As such, the pre-existing licenses and leases encumbered both the fee conveyed to the Park Authority and the easement retained by Virginia Power. The record reveals that upon transfer of the fee interest from Virginia Power to the Park Authority with the retaining of Virginia Power's easement all subject to the use of pre-existing licenses and leases of third parties, the telecommunications usage was not exclusive to Virginia Power.

The language of the Option Agreement repeated in the deeds demonstrates the non-exclusive nature of Virginia Power's telecommunications easement. While Virginia Power reserved "all [of] its electrical facilities," it also reserved to itself and its successors, but not to its assigns, the following:

> [T]he perpetual right, privilege and
> easement of right of way to lay, construct,
> operate and maintain one or more lines of
> poles, towers, structures, cables, conduits,
> pipes and mains, together with all wires,

14

manholes, handholes, valves, regulators, meters, attachments, equipment, accessories and appurtenances desirable in connection therewith (hereinafter referred to as "facilities"), for the purpose of transmitting or distributing electric power, for the purpose of transporting natural gas, oil, petroleum products or any other liquids, gases or substances which can be transported through a pipe line, and for communication purposes, over, under, upon and across the lands hereby conveyed.

Such reservation is specifically limited by the following:

It is agreed . . . that all references to [Virginia Power] and the Authority shall include their respective successors, and that all obligations hereunder shall also bind any assignees of the Authority.

The deeds explicitly recognize the Park Authority's right to assign in the following provision:

The Authority shall not permit, assign or grant to any other party any easements, rights, privileges or encroachments of any nature on the property hereby conveyed without the prior written approval of [Virginia Power], provided such approval shall not be withheld unreasonably.

On appeal, Virginia Power makes much of the argument that "successors" means "assigns." We need not address such an argument because it is not dispositive of the issue. The issue is whether Virginia Power has an exclusive easement in gross. The clear language permitting the Park Authority to grant third party easements "of any nature" subject to approval by Virginia Power, which shall not be unreasonably

withheld, demonstrates the non-exclusivity of Virginia Power's easement.

Upon review of the record, we hold that the language of the deeds in question is not ambiguous and provides Virginia Power a non-exclusive easement in gross. Accordingly, Virginia Power does not have the right to apportion its easement to third parties. It is unnecessary to address the Park Authority's assignments of cross-error. We will affirm the judgment of the trial court.

Affirmed.

JUSTICE KOONTZ, with whom SENIOR JUSTICE STEPHENSON joins, dissenting.

I respectfully dissent. There is no dispute that the pertinent language replicated in the various deeds by which Virginia Electric and Power Company (Virginia Power) conveyed its fee ownership of the property now known as the "W&OD Trail" to The Northern Virginia Regional Park Authority (the Park Authority) while reserving to Virginia Power the easement in question is unambiguous. Accordingly, we are not permitted to amplify the language in these deeds by consideration of extrinsic evidence. Rather, "[i]t is the court's duty to declare what the instrument itself says it says." Ames v. American Nat'l Bank, 163 Va. 1, 38, 176 S.E. 204, 216 (1934).

In my view, the conclusion reached by the majority in the present case that Virginia Power reserved only a non-exclusive easement in gross and, consequently, that Virginia Power does not have the right to apportion its easement to third parties, is not supported by the unambiguous language under review. Additionally, while the majority properly acknowledges that the principles articulated by this Court in Hise v. BARC Elec. Coop., 254 Va. 341, 492 S.E.2d 154 (1997), are applicable to the resolution of this case, in my view, the majority's conclusion here creates a facially unwarranted tension between the application of those principles in Hise and their application here.

The transactional history which ultimately accomplished the creation of the W&OD Trail and its use by millions of visitors annually need not be repeated. Beyond question, the property is of considerable value both to the Park Authority as the fee owner and to Virginia Power as the owner of the easement. It is axiomatic that the value of each owner's interest in the property would be considerably enhanced by the right to grant telecommunications privileges along the property to third parties. In its simplest context, however, the resolution of the parties' dispute is a matter of determining what property interest the parties intended to be reserved by Virginia Power when it conveyed the fee ownership

17

of the property to the Park Authority.  That interest is to be determined from the unambiguous language in the deeds that conveyed the property to the Park Authority.  Because the pertinent language is concededly identical in all of the deeds, it suffices to review that language in the November 6, 1978 deed between Virginia Power and the Park Authority.

After describing the property conveyed and reciting that the conveyance is made subject to all existing covenants, restrictions, easements, leases, permits and licenses which affect the property conveyed, the deed provides that:

> The Authority agrees that the property hereby conveyed shall be used for public park purposes, and such other purposes as will not endanger or interfere, in any manner, with the rights reserved by [Virginia Power] hereunder, and subject to [Virginia Power's] rights to use such property as described herein.

(Emphasis added).

The deed further provides, with respect to the creation of Virginia Power's easement, that:

> [Virginia Power] reserves unto itself and to its successors . . . the perpetual right, privilege and easement of right of way to lay, construct, operate and maintain one or more lines of poles, towers, structures, cables, conduits, pipes and mains . . . for the purpose of transmitting or distributing electric power, for the purpose of transporting natural gas, oil, petroleum products or other liquids, gases or substances which can be transported through a pipe line, and for communication purposes, over, under and across the property hereby conveyed.

18

(Emphasis added).

Additionally, the deed provides that:

> The Authority shall not permit, assign or grant to any other party any easements, rights, privileges or encroachments <u>of any nature</u> on the property hereby conveyed, <u>without the prior written approval of [Virginia Power]</u>, provided that such approval shall not be withheld unreasonably.

(Emphasis added).

All agree that by the express language of this deed Virginia Power reserved to itself an easement in gross. Such an easement is "exclusive" when it " 'gives the owner the sole privilege of making the uses authorized by it.' " <u>Hise</u>, 254 Va. at 344, 492 S.E.2d at 157 (quoting 5 Restatement (First) of Property § 493 cmt. c (1944)). The plain language of the deed reserves to Virginia Power the sole right to use the property for the various purposes described in the language creating the easement, including "communication purposes." Similar to the situation in <u>Hise</u> with regard to the rights acquired in the eminent domain proceeding, nothing in the language of this deed permits the Park Authority to use Virginia Power's "poles, towers, structures, cables, conduits, pipes and mains" for any purpose. Moreover, the language which prohibits the Park Authority from granting any other party "any easements, rights, privileges or encroachments of any nature on the property" without the approval of Virginia

19

Power is a clear restriction on the rights of the Park Authority as the fee owner of the property and enforces the conclusion that the language creating the easement reserves to Virginia Power the sole privilege of making the uses of the property authorized by that easement. Indeed, as between Virginia Power and the Park Authority, this language provides that Virginia Power has the right essentially to veto the Park Authority's right as the fee owner to grant such privileges, so long as that power is reasonably exercised.

Notwithstanding this clear language, the majority reasons that because "a large number of pre-existing licenses and leases . . . encumbered both the fee conveyed to the Park Authority and the easement retained by Virginia Power . . . the telecommunications usage was not exclusive to Virginia Power." I must respectfully submit that this reasoning is flawed. It is true that the fee ownership of the property was conveyed to the Park Authority subject to these pre-existing licenses and leases and, thus, that ownership was encumbered. It does not follow that the use of the easement retained by Virginia Power was also encumbered so as to deprive Virginia Power of the sole privilege of making the uses authorized by the language of the easement. See Hise, 254 Va. at 346, 492 S.E.2d at 157. These licenses and leases represent rights of third parties with regard to the Park Authority's rights as

20

the fee owner; they do not represent a limitation of the right of Virginia Power to the uses authorized by its easement.

For these reasons, in my view, Virginia Power's easement in gross is exclusive. Of course, whether that exclusive easement is also apportionable is a separate issue. Apportionment refers to the right of the owner of the easement in gross to divide the easement so as to provide independent uses or operations. Hise, 254 Va. at 345, 492 S.E.2d at 157. There can be no dispute that the unambiguous language of the pertinent deeds reflects the intention of the parties that the property conveyed to the Park Authority was to be used for public park purposes. Virginia Power retained an easement in gross that permitted it to use its easement, among other things, expressly for communication purposes. The Park Authority, however, was expressly prohibited from granting "any easements, rights, privileges or encroachments of any nature on the property" without the approval of Virginia Power. And neither party disputes the fact that apportionability increases the value of the easement to its owner, Virginia Power. Under such circumstances, there is an inference in the usual case that the easement was intended in its creation to be apportionable. Hise, 254 Va. at 347, 492 S.E.2d 159. Nothing in the language of the various deeds

under consideration refutes that inference here.  Accordingly, I would hold that Virginia Power's easement is apportionable.

For these reasons, I would reverse the judgment of the trial court and enter final judgment for Virginia Power.