COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Clements and Haley
Argued at Chesapeake, Virginia


BERARD HARRISON

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0855-05-1                  JUDGE JAMES W. HALEY, JR.
                                                     DECEMBER 20, 2005
CECELIA HARDEE, F/K/A
 CECELIA HARRISON


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                           William R. O'Brien, Judge

          Thomas S. Carnes (Colgan, Kimball & Carnes, on brief), for
          appellant.

          Debra C. Albiston (Cynthia A. King; Kaufman & Canoles, on brief),
          for appellee.


          Berard Harrison (husband) appeals an order emanating from a show cause hearing directing

him to reimburse Cecelia Hardee (wife) for premiums paid for hospitalization insurance and to pay

for the future costs of such premiums.  Husband alleges the trial court erred in (1) construing the

term "comparable" in the property settlement agreement (PSA); (2) finding wife did not waive

provisions of the PSA; and (3) ordering payment of more costly premiums than those existing at the

time of execution of the PSA.  Finding no error, we affirm.

                                                I.

          After separating on March 1, 1999, the parties executed a PSA on March 11th of that same

year.  The parties' final divorce decree, dated December 21, 1999, incorporated that agreement.

Pertinent sections of that agreement read as follows:

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

7. <u>Hospitalization:</u>  Husband shall continue his existing hospitalization, or hospitalization comparable thereto, on Wife until she remarries or until the death of either party, whichever first occurs.

12. <u>Documentation:</u>  Each of the parties shall . . . at the request of the other, execute, acknowledge and deliver to the other party any and all further [] documents, deeds and instruments that may be reasonably required to give full force and effect to the provisions of this Agreement.

20. <u>Entire Agreement:</u>  The parties agree that this agreement contains their entire understanding . . . .  No modification or waiver of the terms of this Agreement shall be effective unless in writing and signed by both parties.

24. <u>Attorney's Fees on Default:</u>  Should any party hereto retain counsel for the purpose of enforcing or preventing the breach of any provision hereof, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses incurred, including, but not limited to, reasonable attorney's fees and costs.

In addition to incorporating the agreement, the divorce decree itself contains the same language from section 7 of the PSA quoted above.

Beginning in 1996 and thus prior to the parties' separation, husband continuously maintained a Fortis health insurance policy covering wife.  Husband maintained the policy through his agent Ken Sholar, who supplied both his personal and professional insurance needs.  The provisions of that policy included coverage for the treatment of skin cancer, a disease that wife had contracted prior to the separation.  Husband continued to maintain the policy after entry of the final divorce decree and wife's subsequent move to South Carolina.  Husband knew of this impending relocation prior to entry of the divorce decree.

In November 2002, husband received a letter from Fortis requiring an update on wife's health history.  At a February 11, 2005 hearing generated by this cause, husband testified that he did not provide this information because he "knew nothing of [wife's] address or how to contact her."  As a result, the Fortis policy lapsed.

Despite husband's claim, wife testified that he had contacted her on numerous occasions at her sister's residence in South Carolina. She also testified that husband knew both her brother and son, who like husband, also lived in Virginia Beach and that the parties' two children, each from a prior marriage, regularly communicated. The trial court subsequently found, "It's obvious that he made no attempt to try to contact this la[d]y."

After her move to South Carolina, wife received health insurance through her employer, SunCom, and viewed the Fortis policy as secondary. After leaving SunCom, wife learned from husband in December 2002 that the Fortis policy had lapsed. Wife testified that husband told her to make COBRA payments and "he would be responsible for [the payments]," because "he knew he was obligated to carry [insurance] [and] that he was in agreement to carry it." Husband asked wife to contact Sholar to confirm that the COBRA coverage was comparable to the Fortis policy. Wife did so and mailed Sholar an application for coverage in Virginia. In June 2003, Sholar advised wife that he was unable to help her because she lived out of state and suggested she apply for health insurance in South Carolina.

Upon expiration of her COBRA eligibility, wife applied for health insurance in South Carolina with several different carriers. Each carrier, including Fortis and Blue Cross/ Blue Shield, denied wife coverage due to the lapse in the Fortis policy and her pre-existing skin cancer condition. Wife finally secured health insurance through SHIP, the South Carolina Health Insurance Pool. The SHIP premium of $693.17 increased to $876.28 on her 50th birthday. Wife paid all premium amounts, including COBRA and SHIP, from November 2002 forward.

During argument at the hearing, the trial judge noted:

> For the record the Court's going to find that this agreement is not ambiguous. It is clear, concise and simple as far as the Court is concerned and I don't think that there needs to be a ruling on the interpretation.

The trial judge later held:

> [T]here's been no limitation placed on the financial obligation that [husband] has got to pay for these premiums. . . . It just says he['s] going to provide it. It's going to be comparable.

And with respect to the type of policy originally issued by Fortis, the court concluded, "There's been no evidence - - I'm not exactly sure what kind of policy they had."

By decree dated March 22, 2005, the trial court ordered husband to (1) reimburse wife $11,111.56 for health insurance premiums; (2) pay $500 in attorney's fees; and (3) maintain wife's future coverage in accordance with the agreement.

II.

Initially we note, "[i]t is well established that a property settlement agreement is a contract between the parties and that their rights and obligations are defined under it." Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000). "'The question whether a writing is ambiguous is not one of fact but of law.'" Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003) (quoting Pyramid Dev., L.L.C. v. D & J Assocs., 262 Va. 750, 754, 553 S.E.2d 725, 727 (2001)). "'Accordingly, on appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself.'" Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth., 270 Va. 309, 315, 618 S.E.2d 323, 327 (2005) (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)).

A.

We agree with the trial court's determination that section 7 of the PSA is "not ambiguous." The PSA plainly states that husband is to "continue hospitalization [insurance coverage] . . . to Wife," under either the parties' "[pre-]existing" plan or one "comparable thereto." Pursuant to the PSA, only two conditions would relieve husband of his obligation,

- 4 -

wife's remarriage or the death of either husband or wife. The term "comparable" used in the agreement refers to the level of coverage. "'Coverage' in the field of insurance means 'protection by insurance policy: inclusion within the scope of a protective or beneficial plan'. . . . An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give. " State Farm Auto Ins. Co. v. Brower, 204 Va. 887, 891, 134 S.E.2d 277, 280 (1964) (quoting Webster's Third New International Dictionary 524-25 (1961)).

The term "comparable," as used in section 7 of the PSA, has only one rational meaning: substantially the same coverage. "Comparable" refers to the level of coverage, not the cost of coverage. Accordingly, and as the trial court determined, "comparable" is not ambiguous, and any variation in the cost of maintaining the required coverage is not relevant to husband's contractual obligation to do so.

Nonetheless, husband maintains this Court's decision is controlled by Winn v. Winn, 218 Va. 8, 235 S.E.2d 307 (1977). Such reliance is misplaced because of pertinent factual differences.

In Winn, the parties' PSA, ratified in a final divorce decree, required the husband to maintain either the parties' existing group hospitalization policy with Travelers Insurance Company "'or a similar policy containing substantially the same benefits.'" Id. at 9, 235 S.E.2d at 308. The husband maintained the Travelers policy "in full force and effect." Id. However, when the wife made a claim under the policy, Travelers denied benefits because the Winns' divorce had become final. Id. The Supreme Court dismissed the contempt proceeding, noting the husband was in compliance with the terms of the divorce decree because he in fact maintained the Travelers' policy and that it was Travelers' decision, based upon the finality of the divorce decree, to deny the claim. Id. at 10-11, 235 S.E.2d at 309.

By contrast, in the instant case, husband failed to maintain the Fortis policy, permitting it to lapse by failing to update requested medical information concerning wife, despite his obligation to do so, as required by section 12 of the parties' PSA. The evidence supports the trial court's finding that "[husband] made no attempt to try to contact [wife]," despite having readily available means to effect communication.

Husband testified that "my understanding was that [the Fortis policy] was a policy for husband and wife . . . but Mr. Sholar can clarify that." However, Mr. Sholar never testified as to any family or marriage coverage limitations in the Fortis policy, and no evidence indicates he advised wife of any such limitations when she applied to re-establish Fortis coverage. Though noting Fortis was a national insurance company which could issue policies in South Carolina, Mr. Sholar testified "[wife] moved out of state and I couldn't help her basically." Thus, the trial court concluded it could not determine "what kind of policy they had."

The evidence shows that the reasons the Fortis Insurance Company gave for denying wife's application to issue her a new policy was the lapse in coverage under her old policy and her medical history of skin cancer. These facts, that husband did not continuously maintain the Fortis policy, that the policy lapsed because of husband's failure to provide available information to continue coverage, and that Fortis refused to issue a new policy because of that lapse and wife's medical history, not because of wife's divorced status, distinguishes the instant case from Winn.

B.

Husband also argues that wife waived any coverage requirements under the PSA because she submitted no claims to Fortis for approximately two-and-one-half years subsequent to the divorce. We disagree for two reasons.

First, as quoted above, section 20 of the PSA required any "waiver of the terms of this agreement [to be] in writing and signed by both parties." Husband provided no evidence of such a waiver.

Second, even assuming the PSA had not contained such a provision,

> Two elements are necessary to establish waiver: "knowledge of the facts basic to the exercise of the right and the intent to relinquish that right." Employers Commercial Union Ins. Co. of America v. Great American Ins. Co., 214 Va. 410, 412-13, 200 S.E.2d 560, 562 (1973) . . . . The party relying on a waiver has the burden "to prove the essentials of such waiver . . . by clear, precise and unequivocal evidence." Utica Mut. Ins. Co. v. Nat'l Indem. Co., 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970).

Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv., 267 Va. 642, 652, 595 S.E.2d 1, 6 (2004). The record in this cause contains no evidence supportive of either element of waiver. Thus, we reject husband's argument.

III.

Wife requests an award of attorney's fees and costs incurred on appeal. In accordance with section 24 of the parties' PSA, quoted above, we remand to the trial court to ascertain "all costs and expenses incurred, including . . . reasonable attorney's fees" associated with this appeal, and to enter an award for same to wife.

Affirmed and remanded.