Present:  All the Justices

TERAE BRENZELL HARRIS

                                                        OPINION BY
v.  Record No. 240450                        JUSTICE THOMAS P. MANN
                                                        JUNE 12, 2025

JAMES WESLEY JOPLIN, SR.


FROM THE COURT OF APPEALS OF VIRGINIA

This appeal arises from a circuit court's decision to admit extrinsic evidence to prove the

contents of an illegible liability-release contract.  A panel of the Court of Appeals reversed the

circuit court, holding that it erred because the proponent of the evidence had not met her burden

of proof for admissibility.  Because the Court of Appeals misstated the burden of proof, applied

the incorrect standard of review, and engaged in its own factfinding and ensuing weighing of the

evidence, we reverse.

I.  BACKGROUND

A.  PARKING LOT ACCIDENT & ENTERPRISE'S RELEASE CONTRACT

In June 2016, Terae Harris backed out of a parking space and struck James Joplin, who

was passing by on his motorcycle.  Harris was driving an Enterprise rental car.

Before Joplin filed suit, Enterprise sought a settlement.  In December 2017, a liability

claims adjuster for Enterprise, Galen Powell, emailed Joplin's attorney a one-page bodily injury

release contract (the "release"), offering Joplin the $25,000 policy limit in exchange for his

release of all claims against both Enterprise and Harris.  Powell never received a response from

the attorney.

In May 2018, before the expiration of the statute of limitations, Joplin sued Harris in the

Circuit Court of Henrico County for negligently injuring him, with a $300,000 ad damnum.  By

April 2020, Powell still had not received a reply from Joplin's attorney about Enterprise's settlement offer. Powell sent the attorney a follow-up letter by mail, inquiring about the offer's status. Unbeknownst to Powell, a different attorney at the same law firm had taken on Joplin's case. When that attorney, Theodore Briscoe, received Powell's follow-up letter, he searched his law firm's computer system for Joplin's release but could not locate it. He asked a paralegal assigned to Joplin's case "to find the release so we can get that over to [Enterprise]."

On May 26, 2020, Briscoe and Powell spoke on the phone. Briscoe informed Powell that Joplin was, in fact, interested in accepting Enterprise's settlement offer, though Joplin still intended to sue Harris separately. Powell told Briscoe that, given the language of the release, he did not believe a suit against Harris would be possible; as written, it relieved both Enterprise and Harris of liability. Briscoe asked Powell whether he could send a revised contract that only released Enterprise, but Powell replied that he would have to ask a supervisor.[1]

While Powell and Briscoe were on the phone, Briscoe's paralegal emailed Powell the completed release. It was signed by Joplin, notarized, and had been sitting in Briscoe's firm's computer system for over a year.[2] Briscoe had not personally secured Joplin's signature on the release, nor had he reviewed it before its transmission to Powell. Given their discussions, Briscoe claimed that he asked Powell to keep Joplin's signed release "on ice."

Immediately after the call, Powell documented their conversation in Enterprise's claims administration system, writing:

---

[1] The two also spoke about the possibility of sending a new release given certain statutory amendments (not at issue here), as well as the need to send Harris a notice of the settlement.

[2] Adding to the confusion in this case is the fact that neither Joplin's signature nor the notary's signature is dated. The signed release, which was marked and received by the trial court as Plaintiff's Exhibit 1, reflects Joplin's signature, the notary's signature, and the expiration of her commission, but is otherwise undated.

[r]eceived vm from Theo Briscow [sic]. Called back and discussed. While on the phone, they signed the [sic] and sent the BI release that was sent to them on 12/22/2017. I asked if they reached settlement w/ State Farm[3] as well. He said they were proceeding in suit (which still needs to be rescheduled). I mentioned that the release was to release the renter as well as [Enterprise]. He mentioned that a new release may need to be sent and the notice for the renter to sign would also need to be sent. I mentioned that was an amendment made this year and our release to them preceded that. I told him I would review and get back to him.

### B. HARRIS' PLEA OF ACCORD AND SATISFACTION & POWELL'S DEPOSITION

On July 1, 2020, Harris filed a plea of accord and satisfaction, contending that Joplin's suit against her was barred by the Enterprise release.

The circuit court permitted Harris to take Powell's deposition, with the understanding that Powell would not be available for trial. During the deposition, Harris' attorney asked Powell about his initial transmission of the release to Joplin's original attorney. Powell recounted sending it to Joplin's attorney in December 2017, and he identified his claims administration note to that effect, which was marked as deposition Exhibit 3. Harris' attorney then introduced an unsigned copy of the release, which he marked as deposition Exhibit 4.

Q: I would ask you [Powell] to look at Exhibit Number 4 and tell us what that is.
A: That would be the bodily injury release that the previous exhibit [3] was referencing.
Q: Okay. Would this or would this not be the document that you transmitted to plaintiff's counsel?
A: It would.

---

[3] Harris was personally insured by State Farm.

Inexplicably, a legible version of Joplin's signed release was never submitted as evidence. The only exhibits that reflected a signature were otherwise entirely faded, except for the notarial seal. [4] The document, for our purposes, is effectively blank.

After reviewing the unsigned release (deposition Exhibit 4), Powell was eventually shown the illegible and purported signed release, which was marked as deposition Exhibit 8. Powell agreed that Exhibit 8 was so faded he could not read the word "release" anywhere on the document. He also testified that Exhibit 8 did not accurately reflect what he had received from Briscoe's paralegal on May 26, 2020. That document, he said, had been legible. Powell maintained, "What we received back was the release."

Following this exchange, Powell's counsel volunteered to email his digital copy of the signed release, which he said was legible, for use as an exhibit. Toward the end of the deposition, Harris' counsel marked it as deposition Exhibit 9 and asked Powell about it:

> Q: I'm getting read[y] to mark it as Exhibit 9. So, Mr. Powell, what is that document?
> A: It's the completed bodily injury release form.
> Q: Is that version of it more legible to you than Exhibit 8?
> A: It is.
> Q: Is that a document that matches what's in your computer file?
> A: It does.
> Q: Is that document the document you've received from Mr. Briscoe while you were having the conversation with him that we've talked about reflected in the claim note [Exhibit 3]?
> A: It's received from his firm.
> Q: Okay. Is that the release that you received from his firm?
> A: Correct.

---

[4] The document also includes a typed message superimposed at the bottom that reads: "Good afternoon. I was able to get this Doc signed for Miss Brittney. If you have any questions please call me." The parties were not able to identify Miss Brittney, the author of the message, or the reason for its inclusion on the release. Powell testified that the message was not standard to any Enterprise forms.

As an exhibit in the record, however, Exhibit 9 is no more legible than Exhibit 8.

## C. PLEA OF ACCORD AND SATISFACTION HEARING

On June 24, 2022, the circuit court heard evidence on Harris' plea of accord and satisfaction. Joplin testified that the signature on the signed release was indeed his own, though he had never authorized any of his attorneys to settle with Harris. Briscoe testified next. However, when Harris sought to question him about the terms of the release using Exhibit 4— the unsigned release—Joplin objected. He argued that Harris' use of the unsigned release to prove the contents of the signed release violated the parol evidence rule.

The trial court took the matter under advisement, and the parties submitted additional briefing. Ultimately, the circuit court granted Harris' plea of accord and satisfaction. It ruled that the parol evidence rule did not apply because the unsigned release was not being used to "alter, vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written instrument." Rather, it was being used to "attempt to confirm the illegible [r]elease." Alternatively, it determined that even if the parol evidence rule were implicated, it would not bar extrinsic evidence where the original document was destroyed, as was effectively the case here.

Joplin appealed to the Court of Appeals on three grounds: (1) the unsigned release constituted improper parol evidence, (2) his prior attorneys lacked the apparent authority to settle the case on his behalf, and (3) there was no mutual assent to support the release.

## D. THE COURT OF APPEALS

A unanimous panel of the Court of Appeals reversed the judgment of the circuit court. It held that "[t]he unexecuted release constituted improper parol evidence to prove the content of the illegible document, and the court erred in admitting it." *Joplin v. Harris*, 2024 Va. App.

5

LEXIS 220, at \*15 (April 23, 2024) (unpublished). Finding the parol evidence issue dispositive, it did not address Joplin's second or third assignments of error. *Id.*

At the outset, the Court of Appeals noted that Virginia courts have "allowed parol evidence to prove the existence and content of a lost or destroyed document," which the illegible contract effectively was. *Id.* at \*11. The Court of Appeals agreed with the circuit court that consideration of the unsigned release did not offend the parol evidence rule "because it was not offered to alter or contradict any part of the illegible document." *Id.* at \*11–12. Rather, it said, the issue was whether Harris met her burden of proof for admissibility: that the unsigned release was "substantively equivalent" to the signed release. *Id.* at \*12. It framed the issue as a pure question of law. *Id.* at \*9.

The Court of Appeals cited *Carter v. Wood*, 103 Va. 68 (1904)—an ejectment case that turned on a destroyed deed—for the proposition that "'the greater the value' of the lost document, 'the more conclusive' should be the proof of its terms." *Joplin*, 2024 Va. App. LEXIS, at \*12. The Court of Appeals observed that, here, the value of the release was "significant for all parties," as it could fully bar Joplin's recovery. *Id.* Nevertheless, it maintained that it was not "articulat[ing] a new standard of proof for admitting parol evidence to substantiate an illegible contractual release," because "[t]he evidence, even when viewed in the light most favorable to [Harris], failed to meet a simple preponderance standard." *Id.*

The Court of Appeals reasoned that Harris' "evidence merely showed that the unexecuted release was a standard form that [Enterprise] used when offering to pay the policy limits to a claimant." *Id.* at \*13. "Although the unexecuted release included the parties' names and the incident date, no evidence established that the document matched what [Enterprise] sent to [Joplin] in December 2017." *Id.* "Only through speculation could the court conclude that the

6

illegible document matched the unexecuted release and contained the provision settling [Harris']

entire claim and releasing all parties of liability." *Id.*

The Court of Appeals therefore reversed the circuit court's grant of Harris' plea of accord

and satisfaction and allowed Joplin's suit against Harris to proceed. *Id.* at \*15. This Court

granted Harris an appeal to address the admissibility of the unsigned release.[5]

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

While the threshold question of parol admissibility is a legal one that we review de novo,

*see Virginia Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 270 Va. 309, 315-16 (2005), we

ultimately review the trial court's decision to admit or deny specific evidence for abuse of

discretion, *see Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 529 (2006).  Indeed, "[t]he

abuse-of-discretion standard includes review to determine that the discretion was not guided by

erroneous legal conclusions." *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (quoting

*Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

"In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our

judgment for that of the trial court.  Rather, we consider only whether the record fairly supports

the trial court's action.'" *Id.* at 543 (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620

(2009)).  "Only when reasonable jurists could not differ can we say an abuse of discretion has

occurred." *Du v. Commonwealth*, 292 Va. 555, 564 (2016).

Moreover, this Court defers to the trial court's factual findings unless they are plainly

wrong or without evidence to support them.  *See Collins v. First Union Nat'l Bank*, 272 Va. 744,

---

[5] Joplin assigned cross-error to the two issues not reached by the Court of Appeals, but a panel of this Court refused those assignments of cross-error.

7

749 (2006). "We also presume—even in the absence of specific factual findings—that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence." *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (citing *Fitzgerald v. Commonwealth*, 223 Va. 615, 627-28 (1982)).

## B. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION

For two reasons, the circuit court did not abuse its discretion by admitting the unsigned release: First, it was not guided by erroneous legal conclusions. And second, its preliminary factual finding was not plainly wrong or without evidence to support it.

### 1. The Circuit Court Was Not Guided by Erroneous Legal Conclusions

"[W]here parties have reduced their contract to a writing [that] imposes a legal obligation in clear and explicit terms[,] the writing shall be the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement." *Jim Carpenter Co. v. Potts*, 255 Va. 147, 155 (1998) (quoting *Pulaski Nat'l Bank v. Harrell*, 203 Va. 227, 233 (1962)). Consistent with that rule, "parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." *Amos v. Coffey*, 228 Va. 88, 92 (1984) (quoting *Godwin v. Kerns*, 178 Va. 447, 451 (1941)). The parol evidence rule is sometimes called the "plain meaning" rule in Virginia. Kent Sinclair, The Law of Evidence in Virginia § 19-1[b], at 1288 (8th ed. 2018). It applies broadly to extrinsic evidence, including both oral statements and writings. *Sale v. Figg*, 164 Va. 402, 409 (1935). The rule may also be enforced against a contract signatory by a third-party beneficiary of the contract. *First Sec. F.S.B. v. McQuilken*, 253 Va. 110, 114-15 (1997).

8

Here, the parol evidence rule did not bar the admission of the unsigned release because the unsigned release was not offered to construe the contract's terms beyond their plain meaning; instead, it was offered merely to verify those terms. This process of verification simply did not implicate the rule's purpose. *See Utsch v. Utsch*, 266 Va. 124, 130 (2003) ("If [there were no parol evidence rule], no lawyer would be safe in advising upon the construction of a written instrument, nor any party in taking under it; for the ablest advice might be controlled, and the clearest title undermined, if, at some future period, parol evidence . . . might be set up to contradict or vary the plain language of the instrument itself." (alteration in original) (quoting 11 Richard A. Lord, *Williston on Contracts* § 33.1, at 556 (4th ed. 1999))). Thus, the circuit court did not err by finding the rule inapplicable here.[6]

---

[6] For clarity's sake, we note that under these facts, the more appropriate objection to the admission of the unsigned release would have been on best evidence grounds, pursuant to Rule of Evidence 2:1002. While the parol evidence rule and the best evidence rule both concern the admission of extrinsic evidence, they are distinct concepts with distinct purposes. The best evidence rule requires a party to produce the original writing as a prerequisite to proving its contents. *Butts v. Commonwealth*, 145 Va. 800, 816 (1926). It ensures the "reliability" of written evidence. *Midkiff v. Commonwealth*, 280 Va. 216, 219 (2010). On the other hand, the parol evidence rule prevents a contracting party from using extra-contractual sources to construe the contract beyond its plain meaning. *Amos*, 228 Va. at 92. Its purpose is one of fairness and to ensure certainty in written dealings. *See Utsch*, 266 Va. at 130.

Admittedly, the distinction between the two rules has not been helped by Virginia courts' historic practice of permitting so-called "parol" evidence whenever the "best evidence" (*i.e.,* the original document) was lost or destroyed. *See, e.g., Smith v. Carter*, 24 Va. 167, 169 (1825); *Millers v. Catlett*, 51 Va. 477, 478 (1853) ("But no foundation was laid for the introduction of parol proof of the facts relied on. The will of Joseph Catlett, or an official copy of it, would have been the best evidence that such a legacy had been bequeathed to John A. Catlett."). As secondary evidence of a writing's contents, however, rather than an interpretive aid, this extrinsic evidence of old is not truly parol evidence as we understand it today.

Here, the unsigned release was offered as secondary proof of the contract's contents—not for use in the interpretation of those contents. Accordingly, best evidence principles applied. *See* Va. R. Evid. 2:1001 through 2:1008. As Joplin did not raise this objection below, however, we will not analyze its application for the first time on appeal. *See* Rule 5:25.

9

2. The Circuit Court's Factual Finding Was Not Plainly Wrong

Having concluded that the parol evidence rule did not bar the admission of the unsigned release, our review of the circuit court's decision to admit it is limited to whether the court's preliminary factual finding was plainly wrong or without evidence to support it. That is, in the light most favorable to Harris, was there record support from which the circuit court could rationally have concluded that the two releases contained the same terms? The answer is yes.

In the first instance, the Court of Appeals misstated Harris' burden of proof as the proponent of the extrinsic evidence. Harris was only required to prove the releases' link by a preponderance of the evidence. This is the burden of proof generally applicable to conditionally relevant evidence, and so it is here. *See Bloom v. Commonwealth*, 262 Va. 814, 821 (2001) ("The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." (quoting *Witt v. Commonwealth*, 215 Va. 670, 674 (1975))); *see also* Va. R. Evid. 2:104(b) ("Whenever the relevancy of evidence depends upon proof of connecting facts, the court may admit the evidence upon or, in the court's discretion, subject to, the introduction of proof sufficient to support a finding of the connecting facts.").

The Court of Appeals' analysis and possible application of the holding in *Carter v. Wood* comes to us as a quandary. In *Carter*, the Court grappled with the considerable policy concerns attendant to orally proving title to real property, which must ordinarily pass by will or deed. 103 Va. 68, 71 (1904). The "clear and conclusive" burden of proof articulated by the *Carter* Court reflects the magnitude of these real property concerns. *Id.* These same concerns, however, are not present here; put another way: real property rights are different. *See, e.g.*, *AGCS Marine Ins. v. Arlington County*, 293 Va. 469, 477 (2017) ("It 'has long been recognized,' therefore, that

10

property rights are 'basic civil rights,' and that a government's failure to protect private property rights puts every other civil right in doubt." (internal citation omitted) (quoting *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972))); Va. Const. art. 1, § 11 (declaring the right to private property "fundamental"). For our purposes, *Carter* is distractive and its holdings do not apply here. Garden-variety contracts—even those that govern personally significant rights—do not rise "to the dignity and importance of a muniment of title." *Carter*, 103 Va. at 71 (quoting *Thomas v. Ribble*, 2 Va. Dec. 321, 325 (1896)). Accordingly, the preponderance standard is the appropriate lens through which to determine the admissibility of the unsigned release.

In the light most favorable to Harris, the prevailing party in the circuit court, there was sufficient evidence for the trial court to conclude—for purposes of admissibility—that the two releases contained the same terms. Powell, who had 15 years of experience working for Enterprise, testified that the unsigned release "would be" the document he transmitted to Joplin's first attorney, and what he received back "was the [signed] release." Even though the signed release presents as illegibly faded, Powell's attorney's digital copy of the signed release (Exhibit 9) did not appear illegibly faded to the parties during Powell's deposition. When asked by Harris' counsel to review Exhibit 9, Powell testified that it matched the signed release he had in his work files. The circuit court was free to credit this testimony. By admitting the unsigned release into evidence, it implicitly did. *See Hill*, 297 Va. at 808.

The Court of Appeals, on the other hand, was not free to reweigh the evidence. Using the threshold question of parol admissibility to justify a de novo review of the circuit court's evidentiary decision, the Court of Appeals substituted its factual determinations for that of the circuit court. It reinterpreted Powell's testimony, overlooked his review of Exhibit 9, and concluded that the only nexus between the two releases was their "similar format." *Joplin*, 2024

11

Va. App. LEXIS, at *13.  In so doing, it neither reviewed the evidence in the light most favorable to Harris nor deferred to the circuit court's implicit factual findings in favor of Harris. This was error.  On this record, there was sufficient evidence to link the two releases by a preponderance of the evidence and thus admit the unsigned release, which ultimately released Harris from liability.[7]

## III. CONCLUSION

For the above reasons, we reverse the judgment of the Court of Appeals and enter final judgment for Harris.

*Reversed and final judgment.*

---

[7] We note that the circuit court did not, as the Court of Appeals put it, "ignore[] the overwhelming evidence that [Joplin] did not intend to settle with [Harris]."  *Joplin*, 2024 Va. App. LEXIS, at *13.  When the circuit court, sitting as trier of fact, does not mention conflicting evidence in its order, we do not presume that it failed to consider that information.  *See Commonwealth v. Holland*, 304 Va. ____,_____, 910 S.E.2d 327, 334 (2025) (unless plainly wrong or without evidentiary support, "it is an appellate court's function to presume that the trial court made the requisite findings of fact to support its decision"); *see also Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) ("[W]hen faced with a record of historical facts that supports conflicting inferences, a [reviewing] court . . . must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the [prevailing party below], and must defer to that resolution." (internal quotation marks omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979))); *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) ("Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts.").  Here, the largely undisputed evidence is that Joplin signed the release forwarded by Enterprise while his counsel stated during negotiations that Joplin did not wish to settle with Harris.  Because the evidence was sufficient to support the circuit court's conclusion that the release Joplin signed released Harris, it was not error to conclude that the signed release prevailed over any oral statements about any contrary desires that may have been held by Joplin during the negotiations.