**COUNCE et al. v. YOUNT–LEE OIL CO.**
**WILKINSON v. SAME.**
**No. 8180.**

Circuit Court of Appeals, Fifth Circuit.
Jan. 16, 1937.

Rehearing Denied Feb. 23, 1937.

Oliver J. Todd and R. F. Roberts, both of Beaumont, Tex., for appellants.

Will E. Orgain, Beeman Strong, and S. M. King, all of Beaumont, Tex., and A. C. Wood, of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

These appeals are from a judgment on an instructed verdict for appellee and against appellants in a suit in trespass to try title, and for damages to 6.9 acres of land, from which appellee had produced large quantities of oil. The appeals raise three questions. One common to both appeals is whether there was any evidence to take appellants to the jury on their claim that G. B. Wilkinson, under whom all appellants claim, died seized of title by limitation to the land, and in 1926 when appellee commenced to take oil, they were owners of the land by inheritance from him. One applicable to the appeal of the married women alone is whether in view of their admission and the undisputed fact that appellee had by October, 1931, perfected limitation title in itself and was entitled to judgment in this suit for the title and possession of the land, appellee could in any event be made to stand in judgment to appellants on their claim of a personal action in this suit for oil severed by it and taken away from the land from 1926 to 1931 before the bar of limitation fell. A third, applicable only to their brother's appeal, is whether a transfer to and an acknowledgement of tenancy under, appellee, executed by C. H. Wilkinson in 1926, was obtained from him by fraud.

Appellee insisted below, it insists here that it showed a complete and perfect title to the land, both of record and by limitation, that G. B. Wilkinson never had nor claimed title to it and that the record is wholly devoid of evidence to make a jury issue on appellants' claim that he did. It stood in the trial court, it stands here, firmly on the ground, that whether G. B. Wilkinson ever had a limitation title is wholly immaterial in view of the admission in appellants' pleadings and the undisputed evidence that appellee at the time of the trial had and for many years before had had, title by limitation to the land under the Statutes of Texas, which provide (Vernon's Ann.Civ.St.Tex. art. 5513): "Whenever an action for the recovery of real estate is barred by any provision of this title, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims."

It points as conclusive against the claim of C. H. Wilkinson, to the finding of the District Judge in appellee's favor on the equitable issue he tendered. It points particularly to the finding that the evidence of Wilkinson by which he sought to impeach the transfer and acknowledgment of tenancy was wholly unreliable and incredible, the evidence of appellee's witnesses credible and convincing.

Appellant, Wilkinson, insists that the District Judge incorrectly apprehended the

evidence on his claim for equitable relief; that it required, indeed compelled, a finding in his favor. The other appellants take sharp issue with the position of appellee that the admission and the fact that appellee has full title to the land, by limitation, precludes their claiming against it as a trespasser, for the oil it took before the bar of limitation fell. They insist that theirs is not a real action, nor one in the nature of such an action, but a personal one in the nature of trespass de bonis asportatis for the conversion of the oil, as personal property, after its severance. They insist that to recover in that kind of action it was needful only that they prove title in themselves to the land, and therefore to the oil taken from it, at the time of the severance and taking; that they need not have shown possession in themselves of the land or the oil at the time of taking or present title or right to re-enter, at the time of suit; that the fact, that judgment went against them for both, is unimportant. They argue, therefore, that it was of the highest materiality for them to show that their father had had, and they had succeeded to a limitation title to the land, and were the owners of it until 1931, when appellee by completing the limitation period extinguished it. They insist too that the evidence they offered tended to show this.

Appellee, on its part insists that it is unheard of, that one never in possession at any time of the oil itself, out of possession of the land, when it was taken, and continuously ever since, and now adjudged to be without title or right of possession or re-entry, can maintain an action against it, the true owner, for the acts of ownership, which established its title. So much of the argument and contention in the briefs, is directed to a discussion of forms of action, and of the necessity that the action to be maintained take this form or the other, that it is important to clearly set out just what this case was, as it was made on the pleadings.

As it was at first brought, by one Jeanette Mann and her husband against appellee, none of the appellants were parties to the suit. They all came in later, C. H. Wilkinson, as a defendant, his sisters as intervenors and defendants, G. B. Wilkinson Estate, Inc., taker pendente lite from the Wilkinson sisters, as intervenor. All of them, in addition to answering the pleadings directed against them, sued appellee for affirmative relief. Appellant, Wilkinson, by cross-action in the statutory form for trespass to try title, sued for title and possession, and for damages, pleading his title specially as a one-third interest under his father. Alleging that in 1926, by fraud or as the result of a mutual mistake, appellee had obtained a deed from him transferring his interests and acknowledging tenancy, he prayed for its reformation and cancellation. The affirmative action of his sisters and the Estate, Inc., was not for the land. Their pleadings admitted that limitation had barred their recovery of it. It was for oil taken from the land by appellee from October, 1926, to October, 1931. As to this, their claim was that, although their real action for the land was barred, their coverture had protected them from limitation as to their personal action for the value of the oil taken. They sued, therefore, as owners of two-thirds of the oil, severed and taken away from the land by appellee, in the five-year period, for damages for its conversion. Appellee, in addition to fully answering all pleadings directed at it, by cross-complaint, sued all the appellants in trespass to try title, and for damages and pleaded the three, five, and ten, year statutes of limitation (Vernon's Ann.Civ.St.Tex. arts. 5507, 5509, 5510).

Before the trial the Manns settled their controversy with appellee and dismissed their action. The cause proceeded thereafter between appellee and appellants on its cross-action, and on their affirmative pleadings against it. A great deal of testimony was taken on the tendered jury issue, whether G. B. Wilkinson had ever had or claimed a limitation title. Testimony was also taken on the C. H. Wilkinson equitable plea. Appellee stoutly maintained, and offered evidence in line with its contention in a former suit, over the title to the land, with other parties in which it had prevailed, Federal Crude Oil Co. v. Yount-Lee Oil Co. (Tex.Civ.App.) 73 S. W.(2d) 969, that such possession as G. B. Wilkinson had had, was as its tenant and subordinate to its title, and that he had never at any time asserted an adverse claim to the land. To make a jury issue on this point, appellants not only offered affirmative evidence, which they claim tended to support their position as to Wilkinson's possession, but made a sharp and bitter attack on the evidence appellee offered in this suit, and had offered in the other, as perjured and suborned. At the conclusion of all the evidence, appellee mov-

ed for a verdict. The motion set out many grounds. Among them was the ground that appellee had showed perfect title in itself, and appellants had offered no evidence tending to show limitation title in Wilkinson, and the ground, that conceding that Wilkinson had had limitation title, appellants could not hold it as a trespasser upon, and make it account for oil taken from, land, which, it is admitted, appellee now owns by a perfect limitation title, matured by acts of possession including, exploring the land for and producing the oil sued for from it. The District Judge, finding C. H. Wilkinson's testimony unworthy of belief, and that he had made out no case for equitable relief, decided the equitable issue against him. He granted appellee's motion for instructed verdict as to him, and as to the other appellants. Nearly the whole of the long record and the greater portion of the briefs, is taken up with a statement of the evidence on the issue of the G. B. Wilkinson limitation claim. A large part of that is the testimony offered for impeaching purposes. Appellants earnestly insist that in view of that evidence especially, they should have been allowed to go to the jury on that issue. Appellee as earnestly insists that the evidence, taken as a whole, has no tendency to support their claim of title.

In the view we take of the case it is wholly immaterial whether appellants are right on this point or appellee is. As to C. H. Wilkinson, the adverse finding of the District Judge in his equitable action is, in the state of the record, conclusive of his claim. As to the other appellants, the decisive point in the case is not who had title to the land in 1926 before appellee's possessory claim began, but that appellee, because of its continuous, exclusive, and adverse possession and acts of ownership thereafter, is deemed to have full title precluding all claims. In this view all questions of forms of action disappear from the case. In this view it plainly appears that, whatever the respective strength and weakness of appellants' and appellee's claim to title in 1926, when in 1931 appellee's possession ripened its claim into "full title precluding all claims," it established appellee, as the true and lawful owner and rightful possessor of the land, from the beginning. It entitled appellee to judgment for the title and possession, a judgment which necessarily concluded those against whom it was rendered, as to all claims they might have had had they broken the possession,

on account of any of appellee's acts of or during such possession. To hold otherwise would, we think, nullify the pronouncement of the Texas Statutes, as to the nature and effect of a title by limitation, and as to the nature and effect of a judgment in a suit of trespass to try title. To hold otherwise would create an anomalous, indeed an impossible, situation, heretofore unheard of in the law of real property. A situation in which one, whose title has been made so perfect by uninterrupted possession that it has become entitled to and has obtained judgment in a real action for title and possession, finds itself, in that same real action, held accountable, to the defendant in the judgment, for the very acts of possession which established its title. A situation created at the suit of those who were in possession, neither of the land, nor of the oil, when it was taken, and who are now, by their own admissions, the undisputed facts, and the judgment entered against them, in law debarred from ownership and possession of the land, and more, from claiming that appellee's possession was ever wrongful.

It is not strange then nor at all to be wondered at, that no case has been cited, none found by us, supporting the position appellants take, the judgment they seek. Indeed, no case except Bryan v. Weems, 29 Ala. 423, 65 Am.Dec. 407, has been cited to us in which a claim at all like the one at bar was ever before advanced.

Appellants say this is because the situation presented here, where married women are barred of their real but not of their personal action, hardly ever arises. But that cannot be the answer, for, if appellants are right, every owner of land who has lost his title by prescription or limitation would have a personal action against the prescriber, for oil, timber, or other things, taken from the land, within the limitation period for personal actions. The answer is to be more broadly sought and found. It is to be, it is found in the self-evident proposition, that it is a contradiction in terms to say, as the Texas Statutes and most other statutes of limitation do, that the effect of the bar of adverse possession is to give the possessor full title precluding all claims, and to say at the same time, that the possessor shall be liable in damages for his acts of possession done while his inchoate title was being perfected. It is to be found, not only in the terms of the Texas Statutes,

but in the general theory which underlies prescription, the theory of relation by presumption, the theory that once matured, the title relates back to the beginning of the prescriptive period. Under that theory it is presumed that the origin of the title was rightful, not wrongful, that the possession which has matured it was in support, not in derogation of the rightful title, and that he, who by a possession perfect in the law has matured a title, has in theory of law been the owner of the title from the beginning. There is no place in the theory of prescription or limitation for the contention appellants put forward, that after the title has matured, the former owner of the land can call the limitation owner to account, for any of his actions done, on or to the land, in the course of the unchallenged possession, that has ripened his right and title to it. The principle of relation is a comprehensive and familiar one in the law of real property. It treats one ousted from possession who has made re-entry, as by relation in continuous possession. Alliance Trust Co. v. Nettleton Hardwood Co., 74 Miss. 584, 21 So. 396, 36 L.R.A. 155, 60 Am.St.Rep. 531. It gives the owner of an inchoate title when his title has ripened, title as from the beginning. Gilbert v. McDonald, 94 Minn. 289, 102 N.W. 712, 110 Am.St. Rep. 368. The principle has peculiar application to prescription and titles by limitation. It has precise and compelling force in matters of limitation. This is horn book law. 1 R.C.L. p. 690; 1 Am. Jurisprudence p. 797; 2 C.J. 251. In "Thompson on Real Property", § 2516 (quoted in Stolfa v. Gaines, 140 Okl. 292, 283 P. 563, 567,) the principle is thus stated: "Adverse possession for sufficient time to bar an action to recover real estate confers title, against any title whatsoever, as effectively as if the original owner had made a formal conveyance to the possessor. The title is as full and complete as if the possessor had always held the undisputed title of record. The rule rests upon the theory that, when possession and use are long continued, they create a presumption of lawful origin; that is, they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property."

The Supreme Court of the United States in Sharon v. Tucker, 144 U.S. 541, 12 S.Ct. 720, 721, 36 L.Ed. 532, an equitable action, to quiet a title by limitation, announced the same rule. It is said there of a limitation owner "he can stand on his adverse possession as fully as if he had always held the undisputed title of record." It is further said there, quoting Angell on Limitations: "It has too long been established to be now in the least degree controverted that what the law deems a perfect possession, if continued without interruption during the whole period which is prescribed by the statute for the enforcement of the right of entry, is evidence of a fee. Independently of positive or statute law, the possession supposes an acquiescence in all persons claiming an adverse interest; and upon this acquiescence is founded the presumption of the existence of some substantial reason, (though perhaps not known), for which the claim of an adverse interest was forborne."

Other cases in point are: Bellefontaine Imp. Co. v. Niedringhaus, 181 Ill. 426, 55 N.E. 184, 72 Am.St.Rep. 269; Davis v. Haines, 349 Ill. 622, 182 N.E. 718; Stolfa v. Gaines, 140 Okl. 292, 283 P. 563; Steinberg v. Salzman, 139 Wis. 118, 120 N.W. 1005; Parker v. Metzger, 12 Or. 407, 7 P. 518; Bryan v. Weems, 29 Ala. 423, 65 Am.Dec. 407; Oahu R. & Land Co. v. Kaili, 22 Hawaii Rep. 673; Leffingwell v. Warren, 2 Black (67 U.S.) 599, 17 L.Ed. 261; Harpending v. Reformed Church, 16 Pet. 455, 10 L.Ed. 1029.

The rule has peculiar force in Texas. The effect of its statutes is to raise an irrebuttable presumption that the person, whose action is barred, has been divested, from the beginning of the adverse possession, of every attribute and incident of title to the land. His title, right, and interest in it have been obliterated, the person whose possession has barred him has taken his place, and holds title by the same chain he held it by direct from the sovereignty of the soil. Texas Jurisprudence, vol. 2, pp. 14 to 18 inclusive. Particular cases illustrating the point are: Burton's Heirs v. Carroll, 96 Tex. 320, 72 S.W. 581; Eckert v. Wendel, 120 Tex. 618, 40 S.W.(2d) 796, 76 A.L.R. 855; MacGregor v. Thompson, 7 Tex.Civ.App. 32, 26 S.W. 649; Goldfrank v. Young, 64 Tex. 432; First Nat. Bk. of Alvarado v. Lane (Tex.Civ.App.) 265 S.W. 763; Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483; Marshburn v. Stewart (Tex. Civ.App.) 295 S.W. 679; Grigsby v. Peak, 57 Tex. 142, 143.

Because under the imperative character of this principle appellants have no right of action, all questions of forms of action become unimportant. Appellants have no right, in any form of action, to recover for the taking of oil from land, which is not only not now theirs, but which, in theory of law, appellee's possession having become complete, was rightfully appellee's when it took the oil from it.

The judgment is affirmed.