[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 698 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 699 
On Applications for Rehearing
The opinion of this court issued on June 24, 2005, is withdrawn, and the following is substituted therefor.
In December 1978, Lindburgh Jackson became the co-owner of a parcel of property fronting Donahue Drive in Auburn, Alabama. At that time, Alabama Power Company ("APCo") maintained power lines across and a power pole on that parcel of property. On April 25, 1983, Jackson and his co-owner, Samuel Harris, through their attorney, sent a letter to APCo regarding the power lines and the pole; in that 1983 letter, Jackson and Harris stated that, after discussions with an APCo official who informed them that the power lines could not be moved, they had "no choice but to seek damages or to work out some arrangement with [APCo] which will permit the full utilization of their property." Despite the fact that APCo took no action to move the power lines or the pole or to otherwise make arrangements with Jackson and Harris, no legal action was taken by Jackson and Harris at that time.
In January 1986, Jackson and Harris had another attorney send another letter to APCo. The 1986 letter gave APCo 30 days to "rectify this particular situation" and threatened legal action if a satisfactory solution was not obtained. Again, APCo made no effort to rectify the situation and no legal action was taken by Jackson and Harris.
Jackson became the sole owner of the property in 1996. In May 1997, he personally wrote a letter to APCo in which he stated "for the last fourteen years we have been going around in circles. . . . This is a notice that Alabama Power employee [sic] are not to trespass on my property unless given permission." In addition, the letter demanded $10.00 per day in damages for traffic signals that had been hung on the power pole by the Alabama Department of Transportation ("ALDOT"). *Page 700 
In June 1997, Jackson had a third attorney write another letter to APCo, the City of Auburn ("the City"), and ALDOT. The June 1997 letter focused on the traffic-signal issue, stating that "[APCo] may have an easement for the utility poles" and demanding $10.00 per day for the past six years the traffic signals had been in place and an agreement for $10.00 per day rent for the continued presence of the traffic signals. Again, Jackson threatened legal action. APCo, the City, and ALDOT took no steps to change the situation, and Jackson did not sue.
In October 1999, Jackson conveyed the property to his daughter, Kathy Matthews. Jackson continued to utilize the property for his business. APCo's power lines and pole remained on the property. Sometime during the months between November 2000 and March 2001, Lightwave Technologies, LLC ("Lightwave"), began installing fiber-optic cable to the existing power pole on the property. Lightwave had entered into a pole-sharing agreement with APCo. The City had authorized Lightwave to place its cable and had established the route for such placement by ordinance.
In September 2003, Jackson sued APCo; the City; Joseph McGinnis, the director of ALDOT; and Lightwave. In the complaint, Jackson alleged that each of the defendants had trespassed on the property[1] and that APCo and the City and Lightwave and the City had separately conspired to commit trespass on the property. Jackson also sought a declaratory judgment regarding an alleged prescriptive easement claimed by APCo. Finally, he asserted a claim against the City and Lightwave under 42 U.S.C. § 1983. Matthews was added as a plaintiff in an amended complaint in March 2004; that complaint added a "due-process" claim against the defendants.
McGinnis filed a motion to dismiss; he was later dismissed from the suit by agreement. All other defendants filed motions for a summary judgment; the trial court entered a summary judgment for all defendants. Jackson and Matthews appealed to the Alabama Supreme Court, which transferred the case to this court pursuant to Ala. Code 1975, § 12-2-7(6).
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City of Gadsden,592 So.2d 1036, 1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee,592 So.2d at 1038 (footnote omitted). "[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989); see Ala. Code 1975, § 12-21-12(d). *Page 701 
Jackson and Matthews appeal the summary judgment, arguing, in general, that the summary judgment is improper because the trial court ignored the genuine issues of material fact. However, Jackson and Matthews specifically challenge the trial court's conclusions that APCo had established, as a matter of law, a prescriptive easement over the disputed property; that APCo's prescriptive easement could be apportioned as a matter of law; and that APCo could not be liable for trespasses committed before the establishment of its prescriptive easement. In addition, Jackson and Matthews argue that the trial court failed to declare the scope of APCo's prescriptive easement.
In response to the City's argument that their lawsuit was barred because they failed to provide the requisite notice to the City pursuant to Ala. Code 1975, § 11-47-23, Jackson and Matthews argue that their lawsuit is not barred because the trespass of which they complain is a continuous one. Jackson and Matthews fail on appeal to challenge the entry of the summary judgment on the "due-process" claim against all of the defendants and the § 1983 claims against the City and Lightwave; therefore, they have waived those particular issues, and the summary judgment, insofar as it relates to the § 1983 and "due-process" claims, is affirmed. Tucker v.Cullman-Jefferson Counties Gas Dist, 864 So.2d 317, 319
(Ala. 2003) (stating general principle that the failure to present and argue an issue in an appellant's brief amounts to a waiver of that issue on appeal).
Jackson and Matthews first complain that the trial court failed to enter a declaratory judgment regarding the scope of the prescriptive easement claimed by APCo. Although the trial court did not expressly determine the width of the easement or establish any parameters of the easement, APCo argued, and the trial court must have implicitly determined, that APCo's easement would "extend to all uses directly or incidentally conducive to the advancement of the purposes for which the right of way was acquired, and the owner retains merely the title in fee, carrying the right to make such uses as in no way interferes with the full and free exercise of the easement."Alabama Power Co. v. Berry, 222 Ala. 20, 24,130 So. 541, 544 (1930). In addition, APCo argues that it established, through the undisputed testimony of one of its employees, that the easement has a width of 30 feet and extends from the ground to the sky. See, generally, Snider v. Alabama PowerCo., 346 So.2d 946, 949 (Ala. 1977) (explaining that when no description of a right-of-way is available, the easement holder is entitled to "a reasonable, convenient and accessible way" depending on the condition of the area, the purpose for which the easement was intended, and the nature of the acts required to make use of the easement). However, even if the trial court determined, as it must have, that APCo's easement is 30 feet wide and extends from the ground to the sky, the trial court could not have, based on that determination alone, resolved the issue of the apportionability of APCo's easement. Thus, we will examine the summary judgment in favor of each defendant in turn.
Because Jackson and Matthews's issues on appeal concerning the summary judgment in favor of the City on the trespass and conspiracy claims are more easily disposed of than the issues on appeal concerning the summary judgment in favor of APCo and Lightwave, we will address those issues concerning the claims against the City first. In its summary-judgment motion, the City argued that Jackson and Matthews failed to comply with § 11-47-23, the municipality nonclaim statute, which requires a claimant to give notice to *Page 702 
a municipality of a tort claim within six months of the accrual of the cause of action. See, generally, Buck v.City of Rainsville, 572 So.2d 419, 419 (Ala. 1990). Jackson filed his claim with the City on September 10, 2003; Matthews filed her claim on January 30, 2004. Jackson and Matthews contend that the trespass they complain of in the present case is a continuing tort. Therefore, Jackson and Matthews conclude, they did give notice within six months of the accrual of their cause of action and therefore are entitled to maintain a cause of action against the City for the trespasses committed from six months before their filing of their respective notices and thereafter.
In City of Clanton v. Johnson, 245 Ala. 470, 475,17 So.2d 669, 672 (1944), our supreme court held that an action against a city for an abatable nuisance arising from the operation of the city's sewage system was presented within six months of its accrual despite the fact that the sewer system had been installed more than six months before the presentment of the claim. The court determined that the claim was timely presented because the cause of action for an abatable nuisance arises at the time the harmful consequences occur and because each occurrence of the abatable nuisance is a separate cause of action. Johnson, 245 Ala. at 473, 17 So.2d at 672. Our supreme court has likewise held that "[a] structure maintained on another's property is a continuing trespass . . . . [that] creates successive causes of action." Alabama Power Co. v.Gielle, 373 So.2d 851, 854 (Ala.Civ.App. 1979).
Therefore, based on Gielle and Johnson, the City was not, on the basis of the nonclaim statute, entitled to a summary judgment on any trespass claims arising during the six months before and any period subsequent to the filing of Jackson's and Matthew's respective notices under the nonclaim statute. The civil-conspiracy claims against the City, which have their genesis in the supposed establishment by the City of the route over which Lightwave was to install its cables, are barred by the nonclaim statute, however, because the ordinance establishing the route was enacted in February 2000 and the cables were strung, at the latest, in March 2001 (Le., more than six months before Jackson and Matthews filed their respective notices under the nonclaim statute). The summary judgment on the remaining trespass claims against the City may be affirmed on an alternate ground, however.
As the City pointed out in its summary-judgment motion, the City does not own the pole or any of the lines or cables at issue in this case. Jackson and Matthews do not dispute those facts and, instead, focus on the City's authorization of the placement of Lightwave's cable by ordinance, which would pertain only to the conspiracy claim. Because trespass is the `"entry on the land of another without express or implied authority,'" Central Parking Sys. of Alabama, Inc. v.Steen, 707 So.2d 226, 228 (Aia. 1997) (quoting Foust v.Kinney, 202 Ala. 392, 393, 80 So. 474, 475 (1918)), the City's liability for trespass would have to be premised on its or its agents' entering Jackson and Matthews's property. Jackson and Matthews have not presented substantial evidence indicating that the City or any of its agents ever entered the property, and, therefore, they failed to overcome the City's motion for a summary judgment. The summary judgment in favor of the City on the trespass and conspiracy claims is affirmed.
We will now proceed to a discussion of the summary judgment in favor of APCo. APCo's motion for a summary judgment *Page 703 
was based, in large part, on APCo's assertion of a prescriptive easement over the disputed property. APCo contended that it had run power lines over the disputed property since 1930, when, it alleged, the power lines were constructed in a city right-of-way along what was then Grouse Road. The power pole located on the disputed property was first erected in 1962. APCo pointed out that Jackson had been co-owner of the property since 1978 and that Jackson had complained about the power lines and pole since April 1983. Thus, APCo argued, it had a long-established prescriptive easement and Jackson and Matthews could not maintain an action for trespass against it. In addition, it argued that, under the doctrine of laches, Jackson's and Matthews's delay in bringing suit barred the present action. Because the existence of a prescriptive easement is central to the determination of the issues presented in this case, we will first consider whether the trial court properly determined that APCo had established a prescriptive easement as a matter of law.
 "To establish an easement by prescription, the claimant must use the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under a claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner. The presumption is that the use is permissive, and the claimant has the burden of proving that the use was adverse to the owner."
Bull v. Salsman, 435 So.2d 27, 29 (Ala. 1983).
APCo's submissions in support of its summary-judgment motion indicated that it had maintained power lines over the disputed property since 1930 and that it had maintained a power pole on the disputed property since 1962. However, we need not decide whether APCo had established its prescriptive easement in 1930 or in 1962 because Jackson and Matthews concede that the April 1983 letter may be construed as the date upon which APCo's use of the property became adverse to their interests. That being the case, APCo's continued use of the property from April 1983 to September 2003 was clearly adverse to Jackson and Matthews.[2] Thus, *Page 704 
as Jackson and Matthews also apparently concede, APCo established a prescriptive easement, at the latest, in April 2003. Jackson and Matthews fail to comprehend the implication of their concessions. They argue that the establishment of the prescriptive easement in April 2003 would not bar an action on APCo's trespasses committed before that date.[3] Their argument is unsupported by the law.
 "It is a general theory underlying adverse possession that the title, once matured, relates back to the beginning of the adverse holding; and under such theory, it is presumed that the origin of the title was rightful, not wrongful, that the possession which has matured it was in support, not in derogation, of the rightful title, and that the claimant, who by a possession pursuant to law has matured a title, has been the owner of the title from the beginning. After the title has matured the former owner of the land cannot call the adverse possession owner to account for any actions done to the land in the course of the possession that has ripened such party's right and title to it."
3 Am.Jur.2d Adverse Possession § 250 (2002) (footnotes omitted). As explained by the United States Court of Appeals for the Fifth Circuit,
 "[t]o hold otherwise would create an anomalous, indeed an impossible, situation, heretofore unheard of in the law of real property. A situation in which one, whose title has been made so perfect by uninterrupted possession that it has become entitled to and has obtained judgment in a real action for title and possession, finds itself, in that same real action, held accountable, to the defendant in the judgment, for the very acts of possession which established its title."
Counce v. Yount-Lee Oil Co., 87 F.2d 572, 575 (5th Cir. 1937).
The Fifth Circuit Court of Appeals continued to explain the inconsistency inherent in allowing a prior owner to sue the prescriptive owner for trespass arising from the very actions that served to establish title, stating that the answer to the question is found
 "in the general theory which underlies prescription, the theory of relation by presumption, the theory that once matured, the title relates back to the beginning of the prescriptive period. . . . There is no place in theory of prescription or limitation for the contention . . . put forward, that after the title has matured, the former owner of the land can call the [prescriptive or] limitation owner to account, for any of his actions done, on or to the land, in the course of the unchallenged possession, that has ripened his right and title to it."
Counce, 87 F.2d at 576. As more succinctly stated by the Court of Appeals of Oregon, "[w]hen it is considered that each act comprising the elements of adverse possession constitutes a trespass, the relation back doctrine is necessary to put an end to a dispute over the ownership of real property . . . ." Breuer v. Covert, 47 Or.App. 225, 232,614 P.2d 1169, 1173 (1980). An easement acquired by prescription is treated similarly: "[U]pon the running of the prescriptive period and the consequent creation by prescription of an easement, all acts of adverse use contributing to the creation by prescription of such easement become privileged retroactively." Restatement of Property § 465 cmt. a. (1944). *Page 705 
Based on the above-quoted principles, the former owner of property acquired by adverse possession cannot maintain a suit for trespass against the current owner once the current owner has established title by his adverse possession. Although most of the quotations above are based on principles underlying adverse possession, the only major difference between the doctrines of prescription and adverse possession is the difference in the rights acquired by each: one who establishes adverse possession of property obtains title to the property while one who establishes an easement by prescription establishes only a right to use the property. See 7Thompson on Real Property § 60.03(b)(6)(I) (Thomas ed. 1994). Therefore, we conclude that the trial court correctly determined that Jackson and Matthews cannot maintain an action against APCo for the trespasses that gave rise to the prescriptive easement and that it properly entered a summary judgment in favor of APCo on the trespass claim against it.
In order to determine whether the summary judgment in favor of Lightwave on the trespass and conspiracy claims against it and the summary judgment in favor of APCo on the conspiracy claim against it were proper as well, we must next consider whether APCo has the right to apportion its prescriptive easement and whether its apportionment to Lightwave was within the scope of the prescriptive easement. If APCo has the right to apportion the easement and the apportionment was within the scope of the easement, then Lightwave could not have committed a trespass and APCo and Lightwave could not have conspired to commit a trespass. If, however, APCo cannot apportion its prescriptive easement, or if the apportionment to Lightwave exceeds the scope of the easement, Lightwave's actions could amount to trespassing on the property and APCo could, depending on facts that would be developed on remand, be shown to have conspired with Lightwave to commit a trespass.
Lightwave argues that the Alabama Supreme Court has already determined the issue of the apportionability of power-line easements in Cousins v. Alabama Power Co.,597 So.2d 683 (Ala. 1992). Jackson and Matthews, however, argue thatCousins is distinguishable in that it involved two express easements and an easement acquired by condemnation and not a prescriptive easement. Discussions of Cousins
and of the law regarding both the apportionability of easements and the scope of prescriptive easements will be necessary to decide whether APCo has the right to apportion the prescriptive easement in the present case and whether the apportionment to Lightwave is within the scope of APCo's prescriptive easement.
The term "apportionability" in reference to easements refers to the easement owner's right to divide the easement "to produce independent uses or operations." See Restatement ofProperty § 493 cmt. a. (1944). In general, an exclusive easement in gross is apportionable to the extent the additional use is "authorized by the manner or terms of [the easement's] creation." Id. at cmt. c. An easement in gross is an easement that "benefits a particular person or persons (or business or organization) whether or not they own another piece of land"; that is, the person or entity owning the easement is benefited personally rather than the benefit of the easement accruing to another piece of land. 7 Thompsonon Real Property § 60.02(f)(2) (Thomas ed. 1994); 4Powell on Real Property § 34.02[2][d] (2000). "An exclusive easement grants unfettered rights to the owner of the easement to use the easement for purposes specified in the grant `to the exclusion of all others,'" including the servient *Page 706 
owner. Thompson on Real Property, supra, § 60.04(b)(2). APCo's prescriptive easement in the present case is an exclusive easement in gross because it permits APCo to use the easement for the construction and maintenance of power lines and precludes, by its nature, Jackson and Matthews from using the easement for that purpose.
Cousins involved whether APCo could apportion three exclusive easements in gross[4] — two created by express grant and one created by condemnation. The express easements stated that APCo had the right to construct, operate, and maintain electric transmission lines and telegraph and telephone lines. Cousins, 597 So.2d at 686. The condemnation order granted APCo "`the right to construct and erect over said lands such tower, pole and wire lines, and all appliances necessary, convenient and useful in connection therewith . . .'"Id. at 687. APCo desired to replace its existing ground wire cable across the easements at issue with a new ground wire cable containing some fiber-optic communication line. Id. at 685. A portion of the fiber-optic communication line was to be used for APCo's internal communications network; however, APCo intended to share the other portion of the fiber-optic communication line with American Telephone and Telegraph Company ("AT T").Id.
The servient owners conceded that APCo had the right to string the new ground wire cable containing the fiber-optic communication line because, in the case of the express easements, such lines were equivalent to telephone lines, which were expressly permitted by the easement, and in the case of the condemnation order, the communication line would be permitted under its language insofar as the line was used for communication in connection with the distribution of power to the public. Id. However, the servient owners objected to APCo's sharing its easements with AT T without first obtaining the consent of or compensating the servient owners.Id. at 686. The trial court entered a summary judgment for APCo, stating that "`under the prevailing authorities and the facts of this case, [APCo] can lawfully share the use of its communication lines with another entity such as AT T, regardless of whether its rights-of-way [were], obtained by deed or by condemnation proceedings.'" Id.
In deciding that the trial court had properly determined that APCo was entitled to judgment as a matter of law on the issue whether it had the right to apportion its easements, theCousins court stated that "[m]any courts have found that utility companies are authorized to share or apportion their easement rights with a third party, without obtaining the permission of, or compensating the owner of, the servient estate." Cousins, 597 So.2d at 687 (citing in a footnote Jolliff v. Hardin Cable Television Co.,26 Ohio St.2d 103, 269 N.E.2d 588 (1971); Hoffman v. CapitolCablevision System, Inc., 52 A.D.2d 313, 383 N.Y.S.2d 674
(1976), app. den., 40 N.Y.2d 806, 390 N.Y.S.2d 1025,359 N.E.2d 438 (1976); Faulkner v. Kingston Cablevision,Inc., 53 A.D.2d 948, 386 N.Y.S.2d 358 (1976), app.den., 40 N.Y.2d 805, 388 N.Y.S.2d 1025, 356 N.E.2d 1233
(1976); and Henley v. Continental Cablevision of St. LouisCounty, Inc., 692 S.W.2d 825 (Mo.Ct.App. 1985)). TheCousins court also commented that the language contained in the deeds and the condemnation order at issue inCousins was similar to *Page 707 
the language contained in easements in other cases in which courts had determined that the language indicated the grantor's intent to convey the right to apportion.[5] Cousins,597 So.2d at 687. The court further stated that "[a]n apportionment such as the one contemplated by APCo in this case has been held not to constitute an additional servitude."Id. (citing Salvaty v. Falcon CableTelevision, 165 Cal.App.3d 798, 212 Cal.Rptr. 31 (1985)).
In deciding that the language of the easements and the condemnation order in question was sufficient to imply an intent to grant the right to apportion the easement to APCo, the Cousins court relied, in part, upon CentelCable Television Co. of Ohio v. Cook, 58 Ohio St.3d 8,567 N.E.2d 1010 (1991). According to the "Syllabus by the Court" preceding the opinion in Cook, the servient owner inCook had granted to the power company and "`its successors and assigns forever, a right of way and easement . . . for a line for the transmission and/or distribution of electric energy thereover, for any and all purposes for which electric energy is now, or may hereafter be used. . . .'"Cook, 58 Ohio St.3d at 8, 567 N.E.2d at 1011. The Cook court explained that
 "`[where an easement in gross] is created by conveyance, apportionability depends upon the intention of the parties to the conveyance.' . . . Jolliff v. Hardin Cable Television Co., [26 Ohio St.2d 103,] 107, 55 0.0.2d [203,] 205, 269 N.E.2d [588,] 590 [(1971)], citing 5 Restatement of the Law, Property (1944) 3053, Section 493, Comment b."
Cook, 58 Ohio St.3d at 10, 567 N.E.2d at 1013
(footnotes omitted). Although the Cook court did not hold that the language in the easement was "sufficient to express the grantor's clear intent to grant [the power company] the right to apportion its easement," 58 Ohio St.3d at 11,567 N.E.2d at 1013-14, the court continued its analysis to determine the intent of the grantor, finally determining that the easement was intended to be apportionable.58 Ohio St.3d at 11, 567 N.E.2d at 1014. The Cook court further determined that the intended use of the easement was similar to the use granted in the easement and that the apportionment of the easement would not place an additional burden on the servient tenement. 58 Ohio St.3d at 11-12,567 N.E.2d at 1014-15.
The Cook court relied upon an earlier Ohio case,Jolliff v. Hardin Cable Television Co.,26 Ohio St.2d 103, 107, 269 N.E.2d 588, 590 (1971), that relied, in part, on the Restatement of Property § 493 (1944), which explains that "[t]he apportionability of an easement in gross is determined by the manner or the terms of its creation." As explained in the Restatement, the intent of the parties to an easement by conveyance controls whether an easement is apportionable. Restatement of Property
§ 493 cmt. b. (1944). However, "[w]hen an easement in gross is created by prescription, the question of its apportionability is decided in light of the reasonable expectation of the parties concerned in its creation as inferred from the nature of the use by which it was created."Id.
Thus, although Cousins does indeed hold that express easements and easements acquired by condemnation may be apportioned when the language in the document or condemnation order creating the easement indicates an intention to convey or to grant the right to apportion and when the apportionment does not constitute an additional servitude, it cannot stand for the proposition, as urged by Lightwave, that the prescriptive easement *Page 708 
in this case is apportionable to Lightwave as a matter of law without further inquiry. In fact, although we agree that APCo's prescriptive easement may indeed be apportioned, the question that remains — what rights APCo has to apportion — is not decided by Cousins.
The ground wire containing the fiber-optic communication line in Cousins was conceded to be within the scope of both the express easements and the easement by condemnation.Cousins, 597 So.2d at 685. The cable line at issue in the present case, however, has not been conceded to be within the scope of APCo's prescriptive easement. Lightwave's cable line is not contained within the replacement of a preexisting cable strung by APCo like the fiber-optic communication line was in Cousins. See id. As mentioned above, an exclusive easement in gross is generally considered to be apportionable to the extent the additional use is "authorized by the manner or terms of [the easement's] creation."Restatement of Property § 493 cmt. c. (1944). We must therefore consider the parameters — or the scope — of APCo's prescriptive easement.
In Alabama, the scope of an easement established by prescription is determined by the extent of the use. Wright Rice v. Moore, 38 Ala. 593, 598 (1863);Roundtree v. Brantley, 34 Ala. 544, 552 (1859);[6]see also 4 Powell on Real Property
§ 34.13 (2000) ("the scope of [a prescriptive] easement is necessarily a primary function of the continued use or uses by which it was generated"). In addition, our supreme court has recognized that "`it is elementary law respecting easements that neither the dominant owner nor the servient owner is permitted to materially alter the character of the servitude.'" Blalock v. Conzelman, 751 So.2d 2, 6
(Ala. 1999) (quoting Gerber v. Appel, 164 S.W.2d 225,228 (Mo.Ct.App. 1942), quashed in part on other grounds,State ex rel Appel v. Hughes, 351 Mo. 488, 173 S.W.2d 45
(1943)). In Blalock, our supreme court reversed a trial court's judgment permitting an easement holder to prevent the servient owner from cutting trees and other vegetation from the easement in order to further the servient owner's use of the easement area. Blalock,751 So.2d at 7. The court explained that the easement holder, by seeking permission to prevent the removal of the vegetation, was attempting to "change the essential character of the easement from that of a right of way, to — in effect — one of shade and air." Id. at 6. The trial court's judgment restraining the servient owner from removing the trees and vegetation, said the court, was in error because it wrongfully allowed the easement holder to change the character of the easement.
Under Alabama law as explained above, the scope of a prescriptive easement is determined by the scope of the use that established the prescriptive right, and an easement holder is not entitled to materially alter the scope (or character) of its easement. Lightwave contends that APCo's right to divide its easement does not arise from the source of APCo's right, be it by deed, prescription, or otherwise. That is indeed true; as also explained above, the right to apportion typically depends on the type of easement involved and the exclusivity of *Page 709 
that easement. As also noted above, however, theRestatement differentiates between easements acquired by conveyance and those acquired by prescription in its discussion of the apportionability of easements.Restatement of Property § 493 cmt. b. (1944). Specifically, the Restatement indicates that exclusive easements in gross are apportionable to the extent the additional use is within the scope of the easement.Id. at cmt. c. Two reported decisions from other states have considered whether a power company can properly apportion its prescriptive easements to other companies, such as telephone or cable companies; these cases reached different results. See Ogg v. Mediacom, L.L.C., 142 S.W.3d 801
(Mo.Ct.App. 2004); and Hise v. BARC Elec. Coop.,254 Va. 341, 492 S.E.2d 154 (1997).
In Hise, the Virginia Supreme Court considered, among other things, whether the telephone lines and cable lines of third-party companies that had been strung on the power poles maintained by BARC Electric Cooperative ("BARC") in its prescriptive easement over the Hises' property could be moved to the new power poles constructed by BARC over another portion of the Hises' property acquired in an eminent-domain proceeding. Hise, 254 Va. at 344, 492 S.E.2d at 157. In deciding that the telephone and cable lines could be moved to the new poles, the court discussed the apportionability of prescriptive easements, noting that the Restatement
concludes that the reasonable expectation of the parties should be considered. 254 Va. at 346, 492 S.E.2d at 158. The court pointed out that, during the prescriptive period, BARC had permitted the telephone and cable companies to string their lines on its poles and that "[s]uch attachments had been made without objection from the Hises for more than 16 years before this controversy arose"; the court also noted that the Hises had used the cable line for television reception for 8 of those years. Id. Based on those facts, the court concluded that BARC had construed its easement to be both exclusive and apportionable and that the Hises had acquiesced in that construction by failing to object and in using the cable line.Id. Thus, the court concluded that the prescriptive easement was apportionable and that the telephone and cable wires could be properly affixed to the new poles. Id.
In Ogg, however, the cable company fared far differently. The Oggs owned and lived on a family farm over which Platte Clay Electric Cooperative, Inc. ("Platte Clay Electric"), held a long-standing prescriptive easement upon which its poles and power lines were maintained at a height of approximately 18 to 20 feet above the ground. Ogg,142 S.W.3d at 804-05. In early 1999, Mediacom placed fiber-optic cable at a height of approximately 12 to 14 feet above the ground[7] on the poles under a pole-sharing agreement with Platte Clay Electric; Mediacom did not seek permission from, acquire an easement from, or compensate the Oggs for the use of the property. Id. The Oggs objected and sued Mediacom alleging trespass. Id. at 806. Among the Oggs' arguments was that even if Platte Clay Electric had granted Mediacom a license to use Platte Clay Electric's easement, the license was "unlawful in that it would create a right beyond the scope of the original easement." Id. at 808.
The trial court had entered a summary judgment in favor of Mediacom, holding that whether Mediacom could use the license granted by Platte Clay Electric *Page 710 
"`turn[ed] entirely on whether the addition of Mediacom's cable to utility poles already containing an electric wire impose[d] an additional unreasonable burden.'" Id., The Missouri Court of Appeals agreed with the Oggs that the trial court erred by focusing exclusively on the burden imposed by Mediacom's use of the easement, stating that "[w]hile `the owner of an easement may, in some circumstances, license or authorize third persons to use its right of way,' the licensor `may not create a right in excess of [that] held by it, nor . . . a right which as against the owner of the servient estate is an additional burden or servitude upon the fee simple title."'Id., (quoting Eureka Real Estate Inv. Co. v.Southern Real Estate Fin. Co., 355 Mo. 1199, 1206,200 S.W.2d 328, 332 (1947)) (footnote omitted). The Missouri court explained that "the licensing agreement between Platte Clay Electric and Mediacom could, at most, lawfully confer on Mediacom only the rights Platte Clay Electric itself held under its prescriptive easement." Id., at 808-09 (footnote omitted).
The Missouri court stated that, under Missouri law, the rights of the holder of a prescriptive easement are "defined solely by the character and extent of the use made thereof during the prescriptive period." Id. at 809 (quoting Sticklev. Link, 511 S.W.2d 848, 854 (Mo. 1974)) (footnote omitted). As the court further explained, "`[prescriptive] easements arise by reason of use. It is rational that an easement that exists because of use, which falls short of possession, may not be extended in its character and extent beyond the use which existed when the prescription arose.'"Id., (quoting 18 Theodore H. Hellmuth, MissouriPractice: Real Estate Law — Transactions
§ 420, at 430 (2d ed. 1998)). Based on those legal principles, the Missouri court determined that neither Platte Clay Electric nor Mediacom "had the legal right to unilaterally expand, in character or extent, the prior prescriptive use," which, according to the court was "to operate and maintain electrical power cables on poles at a height of approximately eighteen to twenty feet." Id. at 810.
The present case is much more akin to Ogg than toHise. Certainly, Jackson and Matthews allowed APCo to gain a prescriptive easement over the disputed property. However, although Lightwave may have affixed its line to the power pole nearly 3 years before Jackson filed this action, one can hardly conclude that a relatively short 3-year delay amounts to the clear acquiescence apparent in a delay of 16 years like that in Hise.
Lightwave argues, like Mediacom did in Ogg, that it is entitled to share APCo's existing prescriptive easement. Like Missouri law, Alabama law bases the scope of a prescriptive easement on the extent of the use that established the prescriptive right. Alabama law also prohibits an easement holder from changing the character of the easement. Therefore, although we agree with Lightwave that prescriptive, exclusive easements in gross like APCo's are apportionable, we, like the court in Ogg, must conclude that only those rights acquired by APCo may be apportioned.
APCo acquired the right to string power lines across the disputed property. APCo did not acquire a right to string any line or cable providing something other than, or related to, electrical power over the easement. The trial court's summary-judgment order does not specify the parameters of APCo's prescriptive easement; however, based on the arguments presented to the trial court and its decision to enter a summary judgment in favor of Lightwave, we conclude that the trial court determined, based on Cousins, that APCo's prescriptive easement could be apportioned as a matter of law with Lightwave. *Page 711 
As explained above, Cousins does not stand for the proposition that a prescriptive easement is absolutely apportionable without limitation. Thus, the trial court's conclusion that Lightwave, by virtue of APCo's right to apportion its prescriptive easement, acquired the right to string its cable on APCo's pole is incorrect, and the summary judgment on that issue was improperly entered. Withers v.Mobile Gas Serv. Corp., 567 So.2d 253, 256-57 (Ala. 1990) (reversing a summary judgment on, among other things, a trespass claim in favor of the gas company where the gas company used land outside the temporary 20-foot easement to which it was entitled).
At this point we must discuss the defense of laches, asserted both by APCo and Lightwave as an independent ground upon which to affirm the summary judgment in their favor. "To establish the application of the doctrine of laches, [a defendant] ha[s] to show that [the plaintiff] delayed in asserting his right or claim, that his delay was unexcusable, and that his delay caused the [defendant] undue prejudice." Ex parteGrubbs, 542 So.2d 927, 929 (Ala. 1989). "For the doctrine of laches to bar a claim it must be said that `from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice.'" Salter v.Hamiter, 887 So.2d 230, 241 (Ala. 2004) (quotingUssery v. Barrow, 238 Ala. 67, 71,188 So. 885, 888 (1939)).
Because we have determined that APCo established a prescriptive easement, we need not consider whether the defense of laches is applicable to the trespass claim against it. In its summary-judgment motion, Lightwave incorporated APCo's summary-judgment argument concerning the 20-plus-year delay between Jackson's knowledge of the power pole and lines on the disputed property and the institution of this action; Lightwave made no separate argument of its own. Lightwave's first trespass on the disputed property would have been, at the earliest, in November 2000, only three years before the institution of this action. Therefore, we can safely determine that Lightwave did not establish how the shorter, three-year delay between its stringing its cable in 2000 or 2001 and Jackson's and Matthews's institution of their respective actions in 2003 and 2004 prejudiced it in any manner or made it "difficult if not impossible to do justice." Accordingly, laches is not an alternate ground upon which to affirm the summary judgment in favor of Lightwave on the trespass claim. Likewise, any conspiracy claim based on APCo's and Lightwave's conduct in regard to the fiber-optic cable must have arisen approximately three years before the institution of this action, and neither APCo nor Lightwave argued or presented evidence negating any issue of fact concerning whether the three-year delay caused either defendant any prejudice; thus, laches is not an appropriate alternative ground for affirmance of the summary judgment on the conspiracy claims against Lightwave and APCo.
Because APCo's prescriptive easement is limited in scope to the extent of the use that created it, APCo's apportionment of the prescriptive easement does not serve to insulate APCo from the conspiracy claim against it. Nor does APCo's attempt to apportion its prescriptive easement insulate Lightwave from either the trespass claim or the conspiracy claim against Lightwave. Neither APCo nor Lightwave make any other argument on the merits of either the trespass or conspiracy claims. Therefore, both the summary judgment in favor of Lightwave on *Page 712 
the trespass and conspiracy claims against it and the summary judgment in favor of APCo on the conspiracy claim against it are reversed, and the cause is remanded for proceedings consistent with this opinion.
APPLICATIONS OVERRULED; OPINION OF JUNE 24, 2005, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, J., concurs.
THOMPSON, MURDOCK, and BRYAN, JJ., concur in the result, without writing.
[1] The complaint specifically alleged that APCo and the City had trespassed beginning in 1997 and that Lightwave had begun trespassing on February IS, 2000.
[2] Jackson's several letters protesting the use of his property were not sufficient to interrupt APCo's adverse use. Generally, the servient owner must make some threat or take some action that results in at least a brief cessation of the adverse use of the claimed easement in order to interrupt the running of the prescriptive period. See Restatement ofProperty § 459(2) (1944); 7 Thompson on RealProperty § 60.03(b)(6)(viii) (Thomas ed. 1994); 4Powell on Real Property § 34.10[3][b] (2000). Although our supreme court did not expressly use the term "interruption," its explanation in Sparks v. Byrd,562 So.2d 211, 216-17 (Ala. 1990), that the easement claimant had established continuous possession because the title owners had failed to exercise ownership of the disputed area "either by entry or by legal action" appears to be consistent with the view expressed in the treatises cited above that a property owner must take some action that results in a discontinuance of the adverse use of the property by the claimant. Other states have disparate views of exactly what level of action by the property owner is necessary under certain circumstances.Compare Concerned Citizens of Brunswick County TaxpayersAss'n v. State ex rel. Rhodes, 329 N.C. 37, 53-54,404 S.E.2d 677, 687-88 (1991) (holding that the actions taken by the property owner, which included placing railroad timbers and stringing cable across a road used by the public to reach a beach, did not cause an interruption of the adverse use because the public simply detoured around the obstacles), withGarrett v. Mueller, 144 Or.App. 330,927 P.2d 612 (1996) (holding that the property owner's act of locking a gate across the disputed area, even though the claimant cut the lock off, was sufficient to interrupt the adverse use). However, failing to do anything other than send letters or make "ineffective protests" would likely not be sufficient in most jurisdictions.
[3] Of course, the six-year statute of limitations applicable to trespass to real property, see Ala. Code 1975, § 6-2-34(2), would bar an action based on any trespasses committed more than six years before the institution of the action.
[4] Although the Cousins court did not define the easements as being exclusive or in gross, they clearly were.
[5] The other cases cited in Cousins also involved express easements.
[6] While Lightwave argues in its brief that these cases have no bearing on the present case because of their precise holdings relating to the prescriptive easements sought in each case, the principle for which the cases were cited by Jackson and Matthews — that prescriptive easements are limited to the extent of the use that established them — is indeed relevant to a determination of whether APCo's prescriptive easement may be apportioned in the manner APCo and Lightwave intended it to be in the present case.
[7] Mediacom also installed underground fiber-optic cable on a portion of the Oggs' property; the portion of Ogg
involving the underground cable is not pertinent to the resolution of this appeal and will not be discussed.